## FLORENCE L. VANDERFORD, EXECUTRIX, ETC., *vs.* THE FARMERS' AND MECHANICS' NATIONAL BANK OF WESTMINSTER.

*One Maker of Joint and Several Promissory Note a Surety—Extending Time of Payment—Alteration—Authority of Bank Cashier.*

When a joint and several promissory note is signed by three parties, the fact that the payee, at or before the delivery of the note, knew that one of the makers was surety for another, and extended the time of payment by virtue of an agreement with that maker, does not operate to discharge the other party who was surety, but who was not accepted as such by the payee.

Since Code, Art. 13, sec. 138 (the Negotiable Instrument Law), provides that a person primarily liable upon a negotiable instrument may be discharged in five designated ways, it follows that he cannot be discharged by any other mode.

The cashier of a bank, which was the payee of a note, made a marginal notation on it as to the time of maturity, and afterwards, when interest on the note was paid in advance, erased that notation and made another endorsement. *Held*, that in an action against one of the joint makers of the note, evidence of this change is not admissible in support of a plea that the note had been altered, in the absence of evidence that the cashier was acting within the scope of his authority or that what he did was ratified by the bank.

*Decided February 28th, 1907.*

Appeal from the Circuit Court for Frederick County (Mc-SHERRY, C. J., and MOTTER, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Charles E. Fink*, for the appellant.

*James A. C. Bond* and *Francis Neal Parke*, for the appellee.

BURKE, J., delivered the opinion of the Court.

The Farmers' and Mechanics' National Bank of Westminster sued Garnett Savage, Edwin J. Lawyer and William H. Van-

derford upon a promissory note dated August 4th, 1902, for three hundred dollars, and payable to the order of the plaintiff in two months from its date. The note is in the following words:

Two months after date we jointly and severally promise to pay to the order of the Farmers' & Mechanics' National Bank of Westminster, Md., three hundred dollars, payable at the Banking House of the said Farmers' & Mechanics' National Bank of Westminster, for value received, hereby waiving the right of all homestead, stay and exemption laws.

300                                        Garnett Savage,
                                            Edwin J. Lawyer,
                                            Wm. H. Vanderford.

The declaration contains the six common counts and a special count setting out the note. Vanderford pleaded the general issue pleas, and four special pleas. two of which were pleaded upon equitable grounds. Issue was joined upon the general issue pleas, and a demurrer was filed to the special pleas. The record in the case, upon the suggestion and affidavit of Vanderford, was transmitted to the Circuit Court for Frederick County for trial. William H. Vanderford having died before the trial, Florence Leigh Vanderford, his executrix, was made party defendant. An additional plea was then filed, to which the plaintiff demurred. The Court sustained the demurrer to the third, fourth, fifth and sixth pleas, and overruled the demurrer to the seventh plea. A traverse was filed to the seventh plea, "with errors of pleading," as the record states, "as to said traverse waived." Issue was joined upon the traverse, and by consent, the case was tried before Court, and resulted in a verdict and judgment for the plaintiff for the sum of three hundred and fifty dollars and twenty-five cents, from which this appeal was taken.

The defense attempted to be set up by the third, fourth, fifth, and sixth pleas, to which the demurrer was sustained, was that William H. Vanderford was a *surety* upon said note for Garnett Savage, and was not a *joint* and *several maker* thereof with Savage and Lawyer as the terms of the note imported; that the fact of his suretyship on the note was known to the plaintiff at the time the note was executed and delivered; that after the maturity of the note, with the knowledge that Savage was.

the principal and beneficiary of the note, and that the defendant was only a surety thereon, the plaintiff for a valuable consideration paid to it by Savage, and without the knowledge and consent of the defendant, and without any reservation of its right to sue on said promissory note, agreed with Savage to extend, and did extend the time for the payment of the note until the 4th day of December, 1902, whereby, the pleas aver, the defendant was discharged from the payment of the note, and from all liability thereon.

The proposition asserted in these pleas is, that where by the terms of a promissory note, two or more persons are joint and several makers thereof, the mere knowledge by the payee, at or before the execution and delivery of the note, that one is surety for another, will, in connection with such facts as are alleged in the pleas, and which we have stated above, operate to discharge the surety in an action at law brought on the note.   Such is certainly not the rule in this State.   In *Yates* v. *Donaldson*, 5 Md. 402, this Court said that the principle deducible from the cases being, as we think, that where the party does not appear on the instrument to have made himself liable as surety, he cannot at law avail himself of the equities between himself and the other parties to the instrument, unless he was *accepted by the creditor as surety*, or has been discharged by the acts of the creditor, according to the principles of *Glenn* v. *Smith*, 2 G. & J. 493.   It will be seen, by reference to the case of *Glenn* v. *Smith, supra*, that the principles there announced have no application to the pleadings in this case.

Where the facts attending the execution and negotiation of the note bring the case within the rule stated in the cases of *Ives* v. *Bosley*, 35 Md. 262; *Owings* v. *Baker*, 54 Md. 82, and *Keyser* v. *Warfield*, 100 Md. 72, it would undoubtedly be open to the defendant to show, under the authority of those cases, either under the general issue, or under a special plea in bar that he was surety on the note, and that he was discharged from liability thereon.   The principle announced in those cases is that if the contract set up is differeent from that which

attached by presumption of law, it must be established by proof that it was the understanding of *all the parties to the instrument*, and it necessarily follows that if a different contract from that which arises from the terms of the instrument is relied on by special pleas in bar, it must be alleged and proven that such was the understanding of all the parties.    This fact the defendant fails to do in either of the special pleas, nor is it stated in either that the bank accepted the defendant as surety, and not as a joint and several maker of the note.    Assuming, *ex gratia*, that such a defense is now open to one who is primarily liable on a note against the payee, we are of the opinion that each of the special pleas for the reasons stated was fatally defective, and that the demurrer thereto was properly sustained.

But apart from this ground of objection it seems clear that the negotiable instrument law of 1898, ch. 119 (Art. 13, secs. 13 to 208 inclusive, Code 1904), has so modified the prior law upon this subject as to preclude the defendant from setting up his suretyship against the payee of the note.    By section 15 of that Article, William H. Vanderford was primarily liable for the payment of the note, inasmuch as by the terms of the instrument he was required to pay it.    Section 138 of that Article provides that: A negotiable instrument is discharged

1. By payment in due course by or on behalf of the principal debtor:

2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation.

3. By the intentional cancellation thereof by the holder.

4. By any other act which will discharge a simple contract for the payment of money.

5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right.

139. A person secondarily liable on the instrument is discharged:

1. By any act which discharges the instrument.

2. By the intentional cancellation of his signature by the holder.

3. By the discharge of a prior party.

4. By a valid tender of payment made by a prior party.

5. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved.

6. By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument unless the right of recourse against such party is expressly reserved.

Since the passage of the negotiable instrument law this is the first time that the precise question raised by the pleadings in this case, has been presented to this Court for decision, but the intention of the Legislature, as expressed in the sections of the Code we have quoted, would seem to be obvious. That intention is to be ascertained by the words used to express it, and when its meaning as gathered from the words employed, is plain and intelligible, the Court should give it effect. When the Legislature has declared, as it has done in these sections, that a negotiable instrument signed by a party who is primarily liable thereon, as that liability is defined by the act, may be discharged in one of five specified methods, it would seem plain that it meant that the particular method prescribed for the accomplishment of that result should exclude a discharge by any other, or different method, upon the familiar maxim that the express mention of one thing implies the exclusion of another.

Since the enactment of the English Bill of Exchange Act in 1882, negotiable instrument laws have been passed, modelled upon the English Act, in at least fifteen States of the Union. The leading purpose of these laws was stated in the case of *The Bank of England* v. *Vagliano Bros.*, L. R. 1891, Appeal Cases, 144, and in *Wirt* v. *Stubblefield*, 17 Appeal Cases, D. C. 283. In this case the Court had under consideration the construction of the negotiable instrument law passed by Congress in 1899, which in its main and substantial provisions is identical with our own. Mr. Chief Justice Alvey, in the course of his judgment in that case, said "That the great and lead-

ing object of the Act, not only with Congress, but with a large number of the principal commercial States of the Union that have adopted it, has been to establish a uniform system of law to govern negotiable instruments wherever they might circulate or be negotiated. It was not only uniformity of rules and principles that was designed, but to embody in a codified form as fully as possible, all the law upon the subject, to avoid conflict of decision, and the effect of mere local laws and usages that have heretofore prevailed. The great object sought to be accomplished by the enactment of the statute is to free the negotiable instrument, so far as possible, from all latent or local infirmities that would otherwise inhere in it to the prejudice and disappointment of innocent holders as against all the parties to the instrument professedly bound thereby." In that case the Court held two statutes which had theretofore been in force in the District of Columbia, and which have been in force in this State, to have been repealed by implication. Since by the terms of the Act a person primarily liable on a negotiable instrument can only be discharged in one or the other of the particular ways specified in the Act, and since the defendant, William H. Vanderford, did not in either of his pleas claim to have been discharged in either of the prescribed ways, it, follows that upon this ground alone the demurrer to the pleas was rightly sustained.

2. The defendant's seventh plea alleged that the time of payment of the note sued on had been materially altered, in that the time of payment was altered from October 4th, 1902, to December 4th, 1902, without his authority or consent. To support this plea, he offered to prove by John H. Cunningham, the plaintiff's Cashier, that at the time the note was discounted by the bank, the witness made a marginal notation upon the note as follows: " Number 8580 due, 4 Oct., .02 " and further that subsequently, at the time Garnett Savage paid interest in advance for two months upon the note, witness erased the word " Oct.", which the witness had written upon said note, and wrote " Dec." above it so as to read " No. 8580 due 4 Dec., .02," and also that witness at the same time wrote the

following endorsement on back of the note : " Oct. 11, 1902, interest paid to 4 Dec. 1902;" and further offered to prove that the witness was cashier at the time said note was discounted, and at the time he made said entries upon the note ; and that an entry as to the maturity of the note on the index book of notes of the plaintiff made on Oct. 4th, 1902, as follows : "No 8580 Savage, Garnett, 4 Oct. 1902, $300," was changed by the witness on said book of the plaintiff on October 11, 1902, as follows : " 8580 Savage Garnett, 4 Oct., Dec. 1902," that is to say, changed from " Oct. 4, 1902, to Dec. 4, 1902."

To this offer of proof the plaintiff objected, and the Court sustained its objection, and this ruling constitutes the defendant's second bill of exceptions. In the absence of evidence to show, or an offer on the part of the defendant to show, that the plaintiff's cashier in doing these acts was acting within the authority conferred upon him by the bank, or in the line of his duty, or that what he did was sanctioned or ratified by the bank, the Court was clearly right in refusing to admit the proffered testimony. The cashier had no implied power by virtue of his office to extend the time of payment of the note without the knowledge or consent of the defendant. The ruling of the Court is fully supported by the case of *Gray* v. *The Farmers National Bank of Annapolis*, 81 Md. 631. What has been said in discussing the demurrer, and the ruling on the second exception disposes of the first exception, which was taken to the action of the Court in admitting the note in evidence. As we find no error in the rulings of the lower Court, the judgment will be affirmed.

*Judgment affirmed with costs.*