Spear, J.
If the answer tendered stated a defense the n,iotion to file it should have been sustained, and to refuse it was error. If, on the other hand, the pleading failed to state a defense, it was not only within the power of the trial court to refuse to permit it to be filed but it was its duty to so refuse and the judgment should be affirmed. The ultimate cjuestion, therefore, is: Where parties execute a joint- and several promissory note, all signing on the face thereof, one being in fact a surety, and the holder of the note, with knowledge of this fact, at the maturity of the note extends the time of payment for a valuable consideration and without the consent of the surety, is the latter discharged from liability on the note? "It is conceded that upon equitable principles incorporated as part of the common law, and sustained by numerous authoritative decisions of the courts of this state, *354 the answer would necessarily be in the affirmative unless the act of April 17, 1902, entitled: “An act to establish a law uniform with the laws of other states on negotiable instruments,” sections 3171 to 3178g, Revised Statutes, requires a different answer. That act establishes the status of parties to negotiable instruments. As to accommodation parties the provision (section 3172a) is: “[Liability of accommodation party.] An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.” As to those primarily liable it provides that: “The person primarily liable upon an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are secondarily liable.” We suppose the law to be too well settled to require citation of authorities in its support, that a surety is an original maker, and becomes primarily liable to any party lawfully holding the paper, his liability to pay being absolute and in no sense ’ dependent upon demand at maturity. To obtain some trust, confidence or credit for another the surety engages to be answerable for him. A surety upon a note undertakes to pay if the principal debtor does not; he is absolutely liable as soon as default is made. Having undertaken to be bound for the debt of another he becomes bound as the principal is hound, and is primarily liable. For further com *355 ment respecting the primary liability of a surety see Rouse v. Wooten, 140 N. C., 557. So that, Richards being, according to the averments' of his answer, a surety, he became liable upon the note primarily at its inception. It is to be understood that here, and elsewhere in the opinion, we are dealing with the liability of an accommodation maker who has signed on the face of the note.
By the act under review the discharge of negotiable instruments as to persons primarily liable is provided in section 3175/ as follows:
“Discharge of Negotiable Instruments.
“Sec. 3175/. [Instrument; how discharged.] A negotiable instrument is discharged: 1. By payment in due course by or on behalf of the principal debtor; 2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; 3. By the intentional cancellation thereof by the holder; 4. By any other act which will discharge a simple contract for the payment of money; 5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right.”
The section following makes provision for discharge with respect to persons secondarily liable, viz.:
“Section 3175/e. [When person secondarily liable on, discharged.] A person secondarily liable on the instrument is discharged: 1. By any act which discharges the instrument; 2. By the intentional cancellation of his signature by the holder; 3. By' the discharge of a prior party; 4. By a valid tender of payment made by a prior *356 party; 5. By a release of the principal debtor, unless the holder’s right of recourse against the party secondarily liable is expressly reserved; 6. By any agreement binding upon the holder to extend the time of payment, or to postpone the holder’s right to enforce the instrument, unless made with the assent of the person secondarily liable, or unless the right of recourse against such party is expressly reserved.”
The entire field of discharge appears to be here covered, and unless some controlling reason can be adduced showing- that this statute doesn’t apply, its application to and control of the case at bar would seem to follow. It is, however, insisted by counsel for plaintiff in error that since there is in the later act no express repeal of earlier legislation bearing on the rights and liabilities of sureties on negotiable instruments, and since repeals by implication are not favored, we must conclude that the former legislation is still in force, and inasmuch as there is apparent conflict between the Negotiable Instruments Act, as construed by the courts below, and the earlier. legislation, it must be presumed that the construction thus given the act is not the correct construction; and that the purpose ascribed by those courts to the general assembly in passing- the act was not its real purpose. The sections of the Revised Statutes to which special attention is called by counsel are numbers 5419; 5832 and 5836, though general reference is made to other sections of the same chapter. Without taking-space to give the above mentioned sections in detail, their substance may be stated thus: Section *357 5419 provides how judgment against principal and surety may be entered, and for execution in such cases; section 5832 provides that sureties on bank paper who were known to be such at the time the contract was made may prove that fact notwithstanding it may contradict the face of the instrument, and section 5836 that a surety in a judgment who has paid it may be subrogated to the rights of the judgment creditor and may revive the judgment if it has become dormant.
We fail to perceive any necessary conflict between these sections and the Negotiable Instruments Act in the particulars here involved, and in this respect we are in accord with the claims of counsel; but does it follow that the conclusion of counsel is correct? It is not contended that either of these sections, or any part of chapter 12, title 1, division 7, provides for the discharge of a surety where a valid agreement for extension of time of payment has been made' as between the holder and the principal debtor, that rule resting entirely upon the principles of the common law. Recurring again to the above cited sections, it will be noted that sections 5419 and 5836 are mainly for the protection and advantage of the surety as between him and the principal debtor, and affect the rights or liabilities of the surety as between him and the holder only incidentally. Section 5419 provides for a situation which may arise when judgment is taken as to the form thereof, and thereafter as to its enforcement; and section 5836 confers rights upon a surety after judgment; neither section providing for - a situation arising, save *358 as above indicated, before judgment; neither giving any discharge from liability on the instrument and preventing judgment. The present act, section 3175/, as we have already found, provides only for the discharge of a party by a discharge of the instrument itself. Section 5832 is an ancient statute intended for the protection of sureties in contracts for the payment of money to banks and bankers, but only to the extent of having such relation defined and established, and securing to such parties the privilege of sureties notwithstanding any contrary expression in the contract itself; that,, is, the terms of the written instrument can, by virtue of this section, be contradicted by oral proof, and such parties are given “all the privileges of sureties,” but there is no attempt to define what those privileges are. In neither of these sections is there any attempt to discharge the surety from the debt itself. So we find that each section sub-serves its own separate and distinct purpose, and neither appears to us to be in any manner or to any extent inconsistent with later legislation.
We come now to section 5833, which presents a different question. It provides that a person bound as surety in a written instrument for the payment of money, may, if a cause of action accrue thereon, by written demand require the creditor to commence an action forthwith against the principal debtor, and proceed diligently to collection, and failure to comply by the creditor shall work a forfeiture of his right to recover of the surety. Here is a provision for discharge as to the instrument itself, and the question is, to *359 whom, taken in connection with all the provisions of the Negotiable Instruments Act bearing on the question of discharge, does it apply? Whether or not it might apply to those who are by section 3178a, made secondarily liable we need not stop to inquire for we have not that situation, but it appears irreconcilable with section 3175;, if attempted to be applied to parties whose names appear on the face of the instrument. We are of opinion that, at all events, it should not be held applicable to those, who, by the terms of the Negotiable Instruments Act, are primarily liable. And the same conclusion applies to section 5834 following.
However, if these sections, or any of them, are so inconsistent with the Negotiable Instruments Act as that they cannot stand with it, then we are satisfied that the older enactments must give way. There is much to he said in support of the claim that the general assembly intended the later act to form a complete system of laws on the subject of negotiable instruments. The title of the act, the main heading “Negotiable Instruments,” and the divisions and subdivisions, lend color to this conclusion, and the subhead, subdivision I of chapter 2, “Negotiable Instruments in General,” would seem especially to imply it. The title of the act is a fair guide to its general purpose. That its' main object was to reconcile, as far as might be, the hitherto irreconcilable conflict between statutes and judicial utterances in the several states, as held in Rockfield v. Bank, 77 Ohio St., 311, is entirely apparent. Commenting upon the effect of the English Bills of Exchange *360 Act, Lord Herschell, in Bank of England v. Vagliano, L. R., 1891, App. Cases, 107, having stated that “the statute was intended to be a code of law relating' to negotiable instruments,” further observes: “I think the proper course is in the first instance to examine the language of the statute and to ask what, is its natural meaning, uninfluenced by any considerations derived from the previous state of the law, and not to start with inquiring how the law previously, stood, and then, assuming that it was probably intended to leave it unaltered, to see if the words of the enactment will bear an interpretation in conformity with this view. If a statute intended to embody in a code a particular branch of the law is to be treated in this fashion, it appears to me that its utility will be almost entirely destroyed, and the very object for which it was enacted will be frustrated. The purpose of such a statute surely was that on any point specifically dealt with by' it, the law should be ascertained by interpreting the language used instead of, as before, by roaming over a vast number of authorities in order to discover what the law was, extracting it by minute critical examination of the prior decisions, dependent upon a knowledge of the exact effect even of an obsolete proceeding such as a demurrer to evidence. * * * The Bills of Exchange Act was certainly not intended to be merely a code of the existing law. It is not open to question that it was intended to alter, and did alter it in certain respects. And I do not think that it is to be presumed that any particular provision was intended to be a statement of the existing law rather than a substituted *361 enactment.” The purpose, as held in Wirt v. Stubblefield, 17 App. Cases, D. C, 283, in construing the Federal statute, was to establish a uniform system of law wherever negotiable instruments shall circulate and are negotiated, and to embody in a codified form, so far as practicable, all the law upon the subject, and thus avoid conflict of decision, and free the law of negotiable instruments from local infirmities that would otherwise inhere in it to the prejudice of innocent holders as against all the parties .to the instrument professedly bound thereby. This purpose cannot be effectuated unless the courts, in their decisions giving. construction to the act, accord its terms controlling effect where they'are inconsistent with previous legislation and judicial interpretation of the common law. A contrary course would defeat the main object of the legislation and perpetuate the ills which that legislation was intended to cure. But the necessities of the case at bar do not require a determination of the question whether or not the entire law of negotiable instruments is to be found in this act and we do not undertake to determine that question. One result, however, seems entirely clear. That is, with respect to the specific provisions of the act bearing upon the issues of the case at bar, the manifest intent of the general assembly was to revise the general subject of the law of negotiable instruments, and where specific provisions are made in the act with respect to a special subject matter such provisions must prevail. So where it is declared, as it is here declared, that a party to such an instrument who is absolutely required *362 to pay the same, is primarily liable and can be discharged from liability in certain specified ways and for certain specified causes, the reasonable conclusion is that the purpose was to enact that such party canliot be so discharged in any other way, or for any other causes. True, section 3175; does not in terms specify the discharge of parties, and it is easily perceived that there is a distinction between the release of a party and the discharge of the instrument itself, but the greater includes the less. A release of a party may be had without destroying the entire instrument, but of course .the instrument cannot be discharged without at the same time and by the same cause effecting a release of the parties. The act does not purport to embody all the law relating to sureties; indeed the word “surety” does not appear in the text of the act at all, but such parties whose names appear on the face of the instrument are sufficiently described by the classification of those “primarily liable.” The act further prescribes that an accommodation party may be a maker without himself receiving value; that' he engages that he will pay the instrument according to its tenor, and may be held liable to the holder though that party knew him to be only an accommodation maker, thus classing him as one primarily liable, and, in a subsequent section, the act further purports to embody all the law as to release of parties “primarily liable” on negotiable instruments by providing for the discharge of the instrument itself. It defines how such parties may be released in five designated ways, none of them embracing the extension of time for *363 payment by the holder, and then follow in the succeeding section the grounds upon which parties secondarily liable may be discharged, and as to them such discharge will follow any valid agreement of the holder to extend payment, etc., without the consent of the person so secondarily liable. The subject of discharge on the ground of a contract of extension of payment by the holder being thus present in the legislative mind, the natural inference would be that, while declaring a purpose on that subject, the entire purpose would be expressed. Nor does the provision of the fourth paragraph of section 3175; to the effect that the instrument may be discharged “by any other act which will discharge a simple' contract for the payment of money,” affect the present issue. As before stated, if the instrument itself is discharged all parties are discharged. If it had been intended that a binding agreement to extend the time of payment should discharge a party, whether primarily or secondarily liable, and is included in the fourth paragraph quoted above, there could be no conceivable reason for the provision in the next section making it a ground of discharge of one secondarily liable. As result from all these considerations we are unable to see how, taking the two sections together, there can be doubt that it was the purpose to enact that as to those primarily liable on the contract no release from liability will follow an extension of time of payment. Expressio unius est exclusio alterius.
That the construction and legal effect here given to the Negotiable Instruments Act is the proper construction is held in Vanderford, Exrx., v. *364 Bank, 105 Md., 164, from which we quote: “Since code art. 13, sec. 138 (the Negotiable Instruments Law), provides that a person primarily liable upon a negotiable instrument' may be discharged in five designated ways, it follows that he cannot be discharged in any other mode.” A like holding is made in Cellers v. Meachem, 49 Ore., 186, as follows: “Under the Negotiable Instruments Act * * * defining an accommodation maker, and making him liable on the instrument to the holder for value, and providing that a negotiable instrument is discharged by payment, etc., an accommodation maker of a note is not relieved from liability by an extension of the time of payment without his consent.” A clearly stated resume of the ground of the decision is given in the opinion, by King, C., from, which we quote: “What is expressed in an act is deemed exclusive, when it is creative, or in derogation of some existing law, or of some of the provisions of a particular act. 2 Sutherland Stat. Constr. Lewis’s 2d ed. sec. 491. It is indicated in. the title of the act under consideration that its purpose is 'to establish a law uniform with the laws of other states on that subject.’ Inasmuch as the enactments relating to negotiable instruments differed in the various states, and as the decisions interpreting both the common law and legislative provisions were far from being harmonious, it must be inferred, from the language constituting the title of the act, that it was intended to provide a complete and comprehensive law on this subject; and, since it defines an accommodation maker, making him primarily liable, and in one section *365 designates how negotiable instruments may be discharged, but contains no provision whereby a person primarily liable can be released,.except by payment, etc., and in the section following specifies the manner in which persons secondarily liable may be relieved of responsibility on such instrument, it follows that the immunities indicated there were intended to exclude all exceptions not contained therein, under the familiar maxim: expressio unius est exclusio alterius. It is therefore clear, under the well-settled rules governing the construction of statutes, that when this act, which, in effect, declares that all persons signing a negotiable instrument shall be liable, whether executed for a valuable consideration or as an accommodation maker, and then specifies the particular manner in which negotiable instruments may be discharged, designating, as an exception thereto, that, when the liability is secondary, it may be avoided by any valid agreement extending the time of payment, etc., without such person's consent, was passed, it was the intention of the legislative assembly to make such provisions exclusive of all others. We are of the opinion that the negotiable instruments act substitutes its provisions for the former law, as recognized by this ’court prior to 1899.” In Wolstenholme v. Smith, 34 Utah, 300, a like doctrine is announced, the holding being that “Under the Negotiable Instruments Law * * * defining an accommodation maker, making him liable to a holder for value, providing that a negotiable instrument is discharged by payment, etc., and that a person secondarily liable on the instrument is discharged *366 by any act which will discharge a simple contract for the payment of money, etc., and defining a person primarily liable as one who by the terms of the instrument is absolutely required to pay the same, etc., an accommodation maker of a note is not relieved from liability by an extension of time of payment without his knowledge or consent.” The Negotiable Instruments Statute in each of these states appears to be in substance identical with our own statute.
A distinction is sought to be made by counsel by the suggestion that neither in Maryland nor Oregon are there other statutes bearing upon the subject and so those courts were limited to and concluded by their Negotiable Instruments Act. The point loses significance when it is remembered that the real question in those cases, as in this case, is not whether or not earlier legislation remains in force but whether a rule of the common law respecting the effect of an unauthorized extension of time for payment by the holder has been abrogated.
We are not aware of any holding of a court inconsistent with the rule of law as announced in the foregoing cases, although the decisions have been the subject of adverse criticism 'by contributors to law magazines. Such criticism is to be expected from the active minds of lawyers who write on legal subjects, especially where new legislation disturbs previous conceptions of the law, or makes obsolete prior holdings, and are often welcomed as valuable aids to correct conclusions, but the mere fact of criticism does not necessarily weaken the force of the decisions them *367 selves. Space does not permit extended notice of these adverse comments even if it were otherwise deemed advisable, but a sample may be here given. It is said that the Maryland case, Vanderford, Exrx., v. Bank, supra, is not authority as giving construction to the Negotiable Instruments Act, because the necessities of the case did not call for a review of that statute, and hence the holding in that regard is mere dicta. Is it ? The note in suit was made after the enactment of the statute. It was a joint and several note, the defendant’s name appearing on the face thereof. . He undertook to plead that he was surety only, known to be such by the plaintiff, and that by an agreement of extension of payment between the holder and the principal he had been released. The plea was met by demurrer. This was sustained on two grounds. One, that by the force of previous decisions of that court the facts pleaded did not .constitute a defense; the other that, by force of the Negotiable Instruments Act, a discharge could not in that manner be effected. Either ground was good, but why is one entitled to more favor than the other? Both presented legitimate points for consideration, and each added to the conclusiveness of the court’s judgment. It will be news to many of the. older members of the profession if it is the law that the determination of a question fairly presented by the record becomes mere dicta if there happens to be another proposition on which the decision might have been based. If a pertinent proposition can be argued out of a case on the above theory, then it would be necessary only for another critic *368 to attack the other ground as dicta to reduce to dicta the entire decision.
It is further insisted by counsel for plaintiff in error that if it should be found that sections 5419, 5832 and 5836, and other sections of the same chapter, were repealed by implication, or do not have application to the case, yet that sections 3175c and 317 Sp of the Negotiable Instruments Act warrant the defense tendered by Richards, the defendant below. Pertinent provisions of those sections follow:
“Sec. 3175o. [Alteration 'of instrument; effect of.] Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers.”
“Sec. 3175/b [What constitutes a material alteration.] Any. alteration which changes: 1. The date; 2. The sum payable, either for principal or interest; 3. The time or place of payment; 4. The number or the relations of the parties; 5. The medium or currency in which payment is to be made; or which adds a place of payment where no place of payment is specified; or any other change or addition which alters the .effect of the instrument in any respect, is a material alteration.”
The question thus made is: Does the extension work a “material alteration” in the instrument? The argument in support of the claim that it does is rested upon the proposition laid down by Brandt on Suretyship as follows: “Any agreement between the creditor and principal which varies essentially the terms of the contract by which the *369 surety is bound without the consent of the surety, will release him from responsibility.” We think this does not satisfy the requirements of the sections above quoted. It does not imply an alteration of the instrument. It is but a statement of the equitable rule hereinbefore stated and considered. It must be borne in mind, as an absolute controlling condition, that it is the instrument itself which the foreg'oing' sections of the statute treat of, not the contract which the instrument is intended to evidence. This, it seems to us, is so manifest on.the face of the printed word that it cannot be more clearly shown by comment, and hardly needs authority in its support. Nevertheless the question has been considered by text-writers and passed upon in a number of adjudicated cases. See 1 Bouvier Law Dictionary, 153, under title “Alteration,” and authorities there cited; also 2 Cyc. of PI. & Pr., 142, under head of “Alteration of Instruments,” and authorities there cited; also 2 Am. & Eng. Ency. of Law, 184, under same head, and authorities. Again, if these sections were intended to apply to a condition other than a physical alteration of the instrument we would expect to find the provisions under section 3175/, where the subject of discharge of instruments is specially treated, and we would not expect to find it elsewhere repeated. We should be slow to ascribe careless and needless tautology to the lawmaking body.
As conclusions, therefore, our holding is that, under favor of the Negotiable Instruments Act, one who signs a promissory note on the face thereof, though he be in fact an accommodation *370 maker and known as such to the holder, thereby becomes primarily liable for its payment; also that such party may be discharged from liability in any one of the ways provided in section 3175; of said act, but not otherwise, and that a contract between the holder of the instrument and the principal for the extension of time of payment, although upon a valuable consideration and without the consent of the surety, will not have the effect of discharging him from liability. To avoid possible misconception it perhaps should be added that this holding does not imply that the ordinary defenses which go to the original liability of the party, such as fraud, duress, or illegality in respect to the consideration, may not be resorted to as heretofore. The term “discharge”’ itself implies an original obligation. If fraud, duress, illegality as to consideration, etc., intervened at the inception of the instrument, then the accommodation party never was liable. Confusion of thought is likely to result from a failure to distinguish between a defense which goes to original liability and one -which arises from some subsequent act or conduct.
We further hold that sections 7175o and 7175p apply to the physical alteration of the instrument itself and do not apply to a contract between the holder and the principal for an extension of time of payment of the instrument.

Judgment affirmed.

Summers, C. J., Crew, Davis and Shauck, JJ., concur.