## HOWTH v. J. I. CASE THRESHING MACH. CO.   (No. 9441.)*

(Court of Civil Appeals of Texas. Dallas. Nov. 28, 1925. Rehearing Denied Jan. 9, 1926.)

1. **Bills and notes** &#8884;338—**Original party to instrument not holder in due course.**

An original party to a note is not a holder in due course, within Negotiable Instruments Act (Rev. St. 1925, art. 5935, § 58).

2. **Bills and notes** &#8884;140—**Accommodation maker may set up against original party discharge by extension of time without his consent.**

An accommodation maker of a note, though primarily liable under Rev. St. 1925, art. 5933, § 29, and article 5948, § 192, may set up against original party to note his discharge from liability by extension of time for payment without his consent; common law, not article 5939, § 119, providing methods for discharge of negotiable instruments, governing.

3. **Principal and surety** &#8884;104(1)—**Negotiable Instruments Act not presumed to have abrogated surety's defense of discharge by extension granted principal without surety's consent.**

Court cannot presume that Negotiable Instruments Act (Rev. St. 1925, art. 5939, § 119), providing methods for discharge of such instruments, was intended to abrogate common-law defense of discharge of surety by extension granted principal by holder of note for valuable consideration without surety's consent, unless such intent is clearly manifested.

4. **Principal and surety** &#8884;90—**Enactment of Negotiable Instruments Act not intended to abrogate surety's right to discharge on common law or statutory grounds.**

Rev. St. 1925, arts. 6244, 6245, relative to discharge of surety, *held* to show that Legislature, by enacting Negotiable Instruments Act, did not intend to abrogate surety's right to claim discharge from instrument on common law or statutory grounds not included in methods mentioned in article 5939, § 119, for discharge of negotiable instruments.

5. **Statutes** &#8884;225—**Statutes as to discharge of negotiable instruments and sureties thereon construed as in pari materia and harmonized.**

Rev. St. 1925, art. 5939, § 119, as to discharge of negotiable instruments, and articles 6244, 6245, prescribing methods for discharge of surety, having been re-enacted as part of one

bill adopting Code, are to be construed as in pari materia, and any seeming conflict should be harmonized and force and effect given to each provision, as it will not be presumed that Legislature intended by inclusion of later act to repeal any provision of earlier one.

**6. Bills and notes ⚙➾140—Defense of discharge of accommodation maker by extension of time without his consent available under statute as to discharge of negotiable instruments.**

Under Rev. St. 1925, art. 5939, § 119, subd. 4, providing for discharge of negotiable instrument by any act which will discharge a simple contract for payment of money, defense of discharge of accommodation maker by extension of time for payment after maturity of note without his consent is available, even if enumerated methods for discharge of instrument contemplate discharge of individual liability as well.

**7. Statutes ⚙➾226—No presumption that Legislature intended · to adopt prior conflicting constructions of statute by courts of other states.**

Court will not presume that Legislature, in adopting Negotiable Instruments Act, intended to adopt prior conflicting constructions of similar provisions thereof by courts of other states.

On Motion for Rehearing.

**8. Appeal and error ⚙➾516—Admission under which defendant was allowed to open and close must be entered of record to be considered.**

Defendant's admission, under which he was accorded privilege of opening and closing in introduction of evidence and argument under rule 31 of district and county courts, must be entered of record to be considered on appeal.

**9. Appeal and error ⚙➾882(7)—Plaintiff requesting peremptory instruction given for it cannot set up deprivation of opportunity to offer rebuttal evidence as ground for remand on reversal of judgment for it.**

Where peremptory instruction for plaintiff at conclusion of evidence for defendant, who was accorded requested privilege of opening and closing, was given at plaintiff's request, plaintiff could not set up that it was thus deprived of opportunity to offer rebuttal evidence as ground for remand on reversal of judgment for plaintiff.

**10. Appeal and error ⚙➾1175(6)—Judgment rendered for plaintiff in error on reversal, where no reason to remand to ascertain fact, and matter to be decreed is certain.**

It is the duty of the Court of Civil Appeals, under Rev. St. 1925, art. 1856, to render judgment for plaintiff in error on reversal, where there is no reason to remand case to ascertain any fact, and matter to be decreed is certain.

Error from District Court, Dallas County; Kenneth Force, Judge.

Action by the J. I. Case Threshing Machine Company against C. W. Howth and another.

Judgment against C. W. Howth, and he brings error. Reversed and rendered.

Thomas, Frank Milam & Touchstone, of Dallas, for plaintiff in error.

Spence, Smithdeal, Shook & Spence, of Dallas, for defendant in error.

LOONEY, J. This suit was instituted by the J. I. Case Threshing Machine Company against Henry Miller and C. W. Howth on a promissory note executed by defendants, payable to plaintiff, and to foreclose a chattel mortgage lien on certain farming machinery for which the note was given. No service was obtained on defendant Miller, and the suit as to him was dismissed.

The defendant Howth, among other defenses, plead discharge from liability on the note for this: That he was an accommodation maker or surety for Miller, the principal obligor, which fact was well known to the plaintiff, and that after the maturity of the note, plaintiff, for a valuable consideration, agreed with Miller to extend the time for the payment of the note without the knowledge or consent of this defendant. The undisputed evidence sustained the allegations of this plea.

The court at the conclusion of the evidence instructed a verdict for the plaintiff against Howth, on which judgment was rendered with foreclosure of the chattel mortgage lien on the implements. The case is before us on writ of error prosecuted by Howth.

The plea of discharge urged as a defense by plaintiff in error should have been sustained by the trial court, unless such defense was abrogated by the Uniform Negotiable Instruments Act adopted in this state in the year 1919 (Acts 1919, c. 123 [Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—1 to 6001—197]).

The Supreme Court of Maryland, in Vanderford v. Farmers' & Mechanics' National Bank, 105 Md. 164, 66 A. 47, 10 L. R. A. (N. S.) 129, the Supreme Court of Oregon, in Cellers v. Meachem, 49 Or. 186, 89 P. 426, 10 L. R. A. (N. S.) 133, 13 Ann. Cas. 997, the Supreme Court of Ohio in Richards v. Market Exchange Bank, 81 Ohio St. 348, 90 N. E. 1000, 26 L. R. A. (N. S.) 99, and the Supreme Court of Oklahoma in Cleveland National Bank v. Bickel, 59 Okl. 279, 159 P. 302, gave to the Uniform Negotiable Instruments Act, which we assume is in each of these states identical with the act as adopted in this state, the effect contended for by defendant in error, holding that one who signs as principal maker of a promissory note, although in fact a surety and known to the payee to be such, is not discharged by the granting of an extension of time for payment to the principal debtor without his consent. These courts reached this conclusion by the following course of reasoning, that is to say, that the surety was primarily liable for the pay-

ment of the note under provisions of the statute the same as ours, as follows: Section 29, art. 5933, Rev. Civ. St. 1925, defines an "accommodation party" in the following language:

"An accommodation party is one, who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.".

Section 192 of article 5948 of the Revised Civil Statutes, 1925, defines primary liability as follows:

"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other persons are 'secondarily' liable."

It is evident that, under these provisions of the Rev. Civ. St., Howth was primarily liable on the note. Building on this idea, the argument is advanced that, as the act provides for the discharge of negotiable instruments in one of five specified methods, any other or different method is excluded under the familiar rule that the expression of one thing implies the exclusion of others.

Section 119 of art. 5939, Rev. Civ. St. 1925, provides five methods for the discharge of negotiable instruments. It reads:

"A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor; (2) by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; (3) by the intentional cancellation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money; (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right."

It was held in the cases above cited that the right of a surety to claim a discharge by reason of an extension granted the principal obligor by the holder, without the consent of the surety, not having been mentioned in the act, such method of discharge as it existed at common law was excluded, and the defense was abrogated.

The reason given for this construction of the statute is fairly illustrated by an excerpt from the decision by the Maryland Supreme Court in Vanderford v. Farmers' & Mechanics' National Bank, 105 Md. 168, 66 A. 49, as follows:

"When the Legislature has declared, as it has done. in these sections, that a negotiable instrument signed by a party who is primarily liable thereon, as that liability is defined by the act, may be discharged by one of five specified methods, it would seem plain that it meant that the particular method prescribed for the accomplishment of that result should exclude a discharge by any other, or different method, upon the familiar maxim that the express mention of one thing implies the exclusion of another."

A contrary holding was announced by the Supreme Court of Iowa in Fullerton Lbr. Co. v. Snouffer, 139 Iowa, 176, 117 N. W. 50, the Springfield Court of Civil Appeals of Missouri in Long v. Shafer, 185 Mo. App. 641, 171 S. W. 691, and the Supreme Court of that state in the same case, 273 Mo. 266, 200 S. W. 1062. In these cases it was held that, between the original parties, as in the case under consideration, the right of a surety to claim a discharge, such as it urged in this case, was not abrogated by the Negotiable Instruments Act, and is as available since as it was before the enactment of that law. This holding is based on a provision of the act which seems to have entirely escaped the consideration of the courts holding to the contrary. This provision, as it appears in our statute, is section 58, art. 5935, Rev. Civ. St. 1925, as follows:

"In the hands of any holder other than the holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

[1,2] The defendant in error is an original party to the instrument sued upon, and therefore is not a holder in due course, within the meaning of the Negotiable Instruments Act. This being true, under the unambiguous provision of the statute just quoted, the defendant in error can occupy no better position than the holder of a nonnegotiable instrument; it follows, therefore, that the discharge pleaded by plaintiff in error was available as a defense just as it existed at common law prior to the enactment of the Negotiable Instruments Act.

In view of this provision of the act it is our opinion that this case is not governed by the provisions of section 119, art. 5939, Rev. Civ. St. 1925, relating to the discharge of negotiable instruments, and is therefore to be governed by rules of law and equity found elsewhere.

Furthermore, it seems that, while section 119 furnishes five methods for the discharge of negotiable instruments in the hands of holders in due course, it has no reference to nor does it attempt to prescribe any method for the discharge of individual liability from an instrument as distinguished from the discharge of the instrument itself. It is true that the discharge of an instrument has the legal effect of discharging all persons liable thereon, whether from a primary or secondary liability, yet the converse of the proposition is not true, as one person may be dis-

charged from liability on an instrument and the instrument remain undischarged as to others. The act will be read in vain for any provision by which one primarily liable on an instrument may be discharged other than such as may result from a discharge of the instrument itself, as provided in section 119.

This being a case not provided for in the Negotiable Instruments Act, we are remitted to the provisions of section 196, art. 5948, as follows:

"In any case not provided for in this act the rules of law and equity including the law merchant shall govern."

[3] When we turn to the common law as declared by the courts of this state, we find that, without dissent, the doctrine has been announced over and over again that when an extension, based on a valuable consideration, is granted the principal debtor by the holder. of the note without the consent of the surety, the instrument is discharged as to him. The rule and the underlying reason for the same was stated by Chief Justice Gaines in Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128, as follows:

"It is the right of the surety at any time after the maturity of the debt to pay it and to proceed against the principal for indemnity. This right is impaired if the creditor enter into a valid contract with the principal for an extension of the time of payment. The obligation of the surety is strictly limited to the terms of his contract, and any valid agreement between the creditor and the principal by which his position is changed for the worse, discharges his liability. For this reason, it is universally held, that a contract between the two, which is binding in law, by which the principal secures an extension of time, releases the surety, provided the surety has not become privy to the transaction by consenting thereto."

In the light of this rule, it cannot be questioned that the defense of discharge such as is urged by plaintiff in error existed at common law, and we could not presume that the Legislature, by enacting the Negotiable Instruments Act, intended to abrogate this valuable right of defense, or any other equally valuable and of long standing, under statutes or at common law, unless such legislative intent is clearly manifested.

In 25 R. C. L. § 280, the rule of presumption against a change in the common law by the enactment of a statute is stated as follows:

"It is not to be presumed that the Legislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention. * * * In order to hold that a statute has abrogated common-law rights existing at the date of its enactment, it must clearly appear that they are so repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory."

[4] That it was not the intention of the Legislature by the enactment of the Negotiable Instruments Act to abrogate the right of an individual to claim a discharge from an instrument on any ground recognized either at common law or under statute is, to our minds, satisfactorily shown by what may be treated as a legislative interpretation of the act in this respect. At the recent regular session of the Legislature (1925) an act was passed adopting and establishing the "Revised Civil Statutes of the State of Texas," in which is to be found title 98, the Negotiable Instruments Act, also title 110, devoted to the subject of "Principal and Surety."

Articles 6244 and 6245 of title 110 prescribe a method for the discharge of a surety as follows; that is, after the accrual of a cause of action on an instrument, the surety may, by written notice, require the creditor or obligee to forthwith institute suit thereon, and a failure to institute the suit within the time and as required by the statute will result in absolutely discharging the surety from all liability on the obligation.

This statutory method for the discharge of a surety is separate and distinct from any provision of the Negotiable Instruments Act, which, under the rule of construction invoked by defendant in error, was abrogated by the Instruments Act because not included as one of the methods for the discharge of instruments mentioned in section 119 of article 5939.

[5] These statutes, re-enacted by the Legislature, constitute parts of one bill, are on the same subject, and are to be construed as in pari materia. It is our duty to harmonize any seeming conflict and give force and effect to each provision, for it will not be presumed that the Legislature intended by the inclusion of a later act to repeal any provision of an earlier one.

[6] If, however, we should adopt the view urged by defendant in error, that is, that the five methods prescribed for the discharge of negotiable instruments contained in section 119 hereinbefore quoted contemplated and provided for the discharge of individual liability from instruments as well, it follows that, under the provisions of subdivision 4 of section 119, the defense urged by plaintiff in error is available.

After enumerating three other methods specified for the discharge of negotiable instruments, subdivision 4 of section 119 reads as follows:

"By any other act which will discharge a simple contract for the payment of money."

Under this latitudinous provision, the door is thrown wide open for the admission of the

defense of discharge based on any act of the parties under any provision of a statute or any rule of law or equity.

[7] In arriving at the conclusion reached in this case, we have been neither aided nor embarrassed by any presumption that the Legislature, in adopting the Negotiable Instruments Act, intended to adopt the construction given similar provisions of the act in either of the groups of states above mentioned, for the reason that these conflicting decisions were in existence, and the discord had developed, prior to the enactment of the statute in our state. We are free, therefore, to construe this statute uninfluenced by either interpretation, except as better reasoning would move us to adopt one of these views in preference to the other.

We are not unmindful of the decision of the El Paso Court of Civil Appeals in the case of Clem v. Chapman, reported in 262 S. W. 168, in which the court gave to the provisions of the Negotiable Instruments Act involved in this discussion the construction that had theretofore been given similar provisions of the Uniform Act by the Supreme Courts of the states of Maryland, Ohio, Oregon, and Oklahoma. In view, however, of the facts of the Clem Case, the proposition under consideration here was not really involved. This statement is based on language used by the court as follows:

"Appellant [Clem] in his propositions assumes that he was a surety on the note and not a principal maker of the note. The facts found by the trial court do not state that he was a surety or so regarded by the bank."

In the brief for plaintiff in error we find a statement not controverted by defendant in error, which we assume to be true, that the Supreme Court, in refusing appellant's application for writ of error, made the following notation: "The facts do not show that Clem was a surety as to the bank." Of course, if Clem's suretyship was not established, the question as to his discharge as such did not arise, and any pronouncement by the court construing the statutes with reference to that question was dictum.

The implication from the language used by the Supreme Court in refusing the writ of error is clear and significant to the effect that, if the facts had shown that Clem was a surety as to the bank, the writ of error would doubtless have been granted on that ground. The El Paso court adopted the construction of the act announced in the Maryland, Ohio, Oregon and Oklahoma cases hereinbefore mentioned. In this discussion we have stated the reasons for our dissent from the view expressed by these courts. We prefer, rather, to follow the rule of construction announced by the courts of Iowa and Missouri, believing that they reached a conclusion of the matter after taking a broader survey of the act, as

they brought into the discussion pertinent provisions of the act that were overlooked or entirely omitted by the other courts in their discussion of the question. In our opinion these omitted provisions of the act that did not enter into the discussion of the courts first mentioned are decisive of the question involved.

For the reasons hereinbefore indicated, we are of the opinion that the court erred in directing a verdict for defendant in error, and, as the material facts are undisputed, the case in our opinion should be reversed and judgment rendered for plaintiff in error; and it is so ordered.

Reversed and rendered.

### On Motion for Rehearing.

[8] Among other grounds set up by the defendant in error in its motion for rehearing is that plaintiff in error was accorded the privilege of opening and concluding, in the introduction of evidence and in the argument, under rule 31 for district and county courts, and that at the conclusion of his evidence the court gave a peremptory instruction in favor of defendant in error, thus depriving it of an opportunity to offer evidence in rebuttal, the insistence being that for this reason the case should be remanded that it may be afforded an opportunity to introduce evidence traversing the case made by plaintiff in error.

[9] We do not challenge the correctness of the statement contained in the brief and argument for defendant in error to the effect that in the trial court Howth was accorded the privilege of opening and concluding in the introduction of evidence, and in the argument under rule 31 for district and county courts, but the record before us is silent on that subject. The rule in question requires that the admission under rule 31 shall be entered of record. For this reason we are not at liberty to consider the contention of defendant in so far as it is based on this proceeding. However, we are of the opinion that defendant in error is in no position to insist that the case be remanded in order that it may be afforded an opportunity to offer evidence in rebuttal, for the reason that the peremptory instruction in its favor was given by the court at its request. It cannot, therefore, be said that it has been deprived of an opportunity to offer evidence in rebuttal, because at its own instance the evidence was closed and the peremptory instruction given.

[10] In determining whether the case should have been rendered or remanded, we were guided by the provisions of article 1856 (1626) (1027) Rev. Civ. St. 1925, to the effect that when the judgment of the trial court is reversed the Court of Civil Appeals shall proceed to render such judgment or decree as the trial court should have rendered, except where it is necessary to ascertain some matter of fact, or when the matter to be decreed

is uncertain. In either of these events the cause shall be remanded.

There is no suggestion from either pleading or evidence adduced that the facts on another trial will probably differ in any material respect from the facts before us.

Having determined that the case should be reversed, and as we find no reason to remand the case in order to ascertain any matter of fact, the matter to be decreed being certain, it is our plain duty, under the statute, to render judgment in favor of plaintiff in error, as should have been done by the trial court.

Motion for rehearing is accordingly overruled.