# W. T. JAMESSON

### *vs.*

## CITIZENS NATIONAL BANK OF WESTERNPORT, MARYLAND.

*Negotiable Instruments Act: accommodation maker; when liable as principal; discharge. Equitable defenses.*

Under the Negotiable Instruments Law (Acts of 1898, ch. 119), an accommodation maker or acceptor is primarily liable, and is not discharged by any extension of time to the endorser, drawer or co-maker, for whose benefit he became a party to the instrument, and this without regard to whether the party suing on the note is the payee, and had knowledge of the relations subsisting between the accommodation maker and the principal debtor.                                                   p. 82

The Negotiable Instruments Act covers cases of suit between the original parties, in so far as its provisions are applicable.
pp. 83-84

An equitable defense is not good (under section 86 of Article 75 of the Code) in a suit at law, unless the facts so set up would entitle the defendant to relief in equity against a judgment at law.                                                   p. 86

Under the Negotiable Instruments Act, in order for a party on a note to have the privilege of a *surety,* it is not sufficient that the payee had knowledge of the relation; but it is necessary that the holder or payee should have agreed in substance to treat him as such; the mere receipt, however, of the note with such knowledge is not necessarily to be taken as such a recognition and acceptance.                                                   p. 87

Under this Act, one who signs a negotiable instrument, so as to render himself primarily liable as defined by the Act, can be discharged only in one of the ways therein set forth.    p. 85

*Decided January 12th, 1917.*

Appeal from the Circuit Court for Allegany County. (HEN-DERSON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CON-STABLE, JJ.

*Albert A. Doub* (with whom was *Taylor Morrison* on the brief), for the appellant.

*Horace P. Whitworth,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

The Citizens National Bank of Westernport, Md., sued W. T. Jamesson—the *narr.* containing three common counts and counts on three promissory notes which were executed by him jointly and severally with T. A. Cross and H. Clay Shaw, and were payable on demand to the order of the plaintiff. Two of them were dated the 10th day of April, 1913, and were for $3,000 and $2,000 respectively, and the other was dated October 27th, 1913, being for $800.00. The defendant filed pleas of never indebted as alleged, never promised as alleged and that after the alleged claim accrued, and before suit, the plaintiff released and discharged the defendant there-from. Later a fourth plea was filed, in which it was al-leged that the notes sued on were given for money loaned by the plaintiff to Theodore A. Cross, who is a maker of said notes and the principal and beneficiary thereof, that the defendant signed them as surety thereon and the plaintiff

knew that he had signed them as surety at the time they were executed and delivered to him, and the defendant was accepted by the plaintiff as surety on said notes and not maker thereof: that on September 1st, 1914, the plaintiff protested said notes for non-payment and thereafter, before the institution of this suit, the defendant tendered to the plaintiff the aggregate of the principal of said notes with the interest thereon and protest fees in full payment thereof, but the plaintiff, without any reservation of its right to sue on said notes, declined and refused to accept said payment, whereby the defendant was discharged from the payment of said notes and from all liability thereon.

A fifth plea was filed in the same language, except it was filed by way of defense on equitable grounds. Another plea, not numbered, and a sixth, seventh, eighth and ninth were filed by way of defense on equitable grounds. Demurrers to the fourth, fifth, sixth, seventh, eighth and ninth and the unnumbered plea were sustained. As the pleas by way of defense on equitable grounds, besides the fifth, occupy over thirty-three pages of the printed record, we can not do more than refer to the principal averments set out in them.

It is alleged that Theodore A. Cross on September 10th, 1913, made a deed of trust upon certain valuable property in Mineral County, West Virginia, to secure, indemnify and save harmless the defendant (Jamesson), H. Clay Shaw and other endorsers and sureties on notes of said Cross, but said Cross was, on the petition of the plaintiff and other creditors filed October 26th, 1914, adjudicated a bankrupt in the District Court of the United States for the Northern District of West Virginia; that on the 29th of December, 1914, the plaintiff brought three separate suits against the defendant in the Circuit Court for Allegany County on the three notes, which suits were consolidated; that the defendant arranged through his attorney to borrow money to pay off the indebtedness and on the 9th of January, 1915, his attorney tendered to the plaintiff the total amount due, but

it refused to accept it, and his attorney then tendered the amount due to the attorney of the plaintiff, who had brought the suits in Allegany County and had the notes in his possession, but he likewise refused to accept it, and on the same day the defendant through his attorney tendered to the Circuit Court for Allegany County the amount due, but before payment could be made the plaintiff dismissed the suits. At a meeting of the creditors of said Cross held in Piedmont, W. Va., on January 11th, 1915, before the referee in bankruptcy the defendant's attorney offered, in the presence of the plaintiff's attorney, to pay the money to the referee, but he ruled that he had no authority to accept it, and the defendant's attorney then offered to pay it to the plaintiff's attorney, who had the notes in his possession, but he again refused to accept it. Thereupon the defendant, by his attorney, notified in writing the attorney for the plaintiff that his refusal to accept the money would be treated by him as a release and discharge from further liability on said notes, and notified him to look to the other makers of the notes. The plaintiff's attorney then filed and proved the notes in the name of the bank before the referee and voted them for the election of a trustee. The property of Cross was afterwards sold by the trustee, and under the construction of the deed of trust made by Cross by the United States Court, it was held that it only secured the note for $800.00, and did not secure the other two notes which defendant was on. The note for $800 was paid in full, and $969.78 was distributed to the one for $2,000 and $1,454.67 to the one for $3,000; that by the refusal of the plaintiff to accept payment of the notes the defendant was deprived of his right to participate in the bankruptcy proceedings, and, as a party, to maintain his contention with reference to the true construction of the deed of trust; that after the refusal by the plaintiff of defendant's several offers to pay off and discharge said notes, H. Clay Shaw, who is a joint accommodation maker or surety with the defendant, executed a deed of trust on all his real

estate in Mineral County, W. Va., where he resides, to secure a loan of $5,000 made to him by the First National Bank of Piedmont, W. Va., etc.

The case was tried before the Court without a jury and a verdict was rendered for the plaintiff for $2,244.64, and from the judgment entered thereon this appeal was taken. The plaintiff offered five prayers, the first, second and third of which were granted and the other two rejected. The defendant offered one, which was rejected. As the principal questions involved are presented by the rulings on the demurrers and the prayers, we need not consider them separately.

As the Negotiable Instruments Act (1898, Ch. 119) was in force when the notes were given, now being in Article 13 of the Annotated Code, it becomes important to determine how far it is applicable. Section 15 of that article is: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable." Section 138 prescribes five methods by which a negotiable instrument is discharged, and Section 139 states how a person secondarily liable on the instrument is discharged. As those sections are quoted in full in *Vanderford* v. *Farmers' Bank*, 105 Md. 164 (which will be referred to at length), and are in the Negotiable Instruments Act, which has been adopted in most of the States (although the numbers of the sections may be different) we will not repeat them in this opinion.

*Vanderford* v. *Farmers' Bank, supra,* was a suit by the bank against Savage, Lawyer and Vanderford, all appearing to be makers. The defense was set up that Vanderford was a surety upon the note, and was not a joint and several maker thereof with the other two, as the terms of the note imported; that the fact of his suretyship on the note was known to the plaintiff at the time it was executed and delivered; that after the maturity of the note, with the knowledge that Savage was the principal and beneficiary of the note, and that the defend-

ant was only a surety thereon, the plaintiff for a valuable consideration, without the knowledge and consent of the defendant, and without any reservation of .its right to sue on said note, agreed with Savage to extend, and did extend the time for payment, whereby, as the pleas averred, the defendant was discharged from the payment of it and from all liability thereon. JUDGE BURKE, in speaking for the Court, first referred to decisions in this State prior to the adoption of the Negotiable Instruments Act, and held that under the law as it then was the demurrers were properly sustained. Then after referring to Sections 15, 138 and 139 of that Act, he said: "When the Legislature has declared, as it has done in these sections, that a negotiable instrument signed by a party who is primarily liable thereon, as that liability is defined by the Act, may be discharged in one of five specified · methods, it would seem plain that it meant that the particular method prescribed for the accomplishment of that result should exclude a discharge by any other, or different method, upon the familiar maxim that the express mention of one thing implies the exclusion of another." It was held that as the defendant did not in either of his pleas claim to have been discharged in either of the prescribed ways, it followed that upon that ground alone the demurrers to the pleas were rightly sustained. Inasmuch as the pleas in that case averred that the defendant was only a surety, that that fact was known to the plaintiff and that the plaintiff extended the time for payment by Savage, who was alleged to be the principal, we can not understand how it can be contended that that decision is not conclusive of the question whether the Negotiable Instruments Act applies to a suit by the payee of a note against one who was by the form of the note a maker. It further settled the question for this State that, although one of several parties signing the note may have in fact only been a surety, he can not escape liability by such an act as that shown in that case—extension of time to the principal. The notes in this case were signed precisely as the one sued on in that case was.

While that decision is sufficient to control us, the great weight of authority is to the same effect. In *Union Trust Co. v. McGinty,* 212 Mass. 205, Ann. Cas. 1913 C 525, the Supreme Court of Massachusetts announced the same rule. CHIEF JUSTICE RUGG, who delivered the opinion, after referring to the object of the Negotiable Instruments Act, said: "Care should be taken to adhere as closely as possible to the obvious meaning of the Act, without resort to that which had theretofore been the law of this Commonwealth, unless necessary to dissolve obscurity or doubt, especially in instances where there was a difference in the law of the different States. Approaching the Act from this point of view, it is apparent that no relation of principal and surety is established or contemplated by any of its sections. It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, whether for accommodation or otherwise, is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. Sections 77, 208. The Act makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instrument signed. The fact that one is an accommodation maker gives rise to a duty no less or greater or different to the holder for value than that imposed upon a maker who received value. This is expressly provided by the Act, even though such holder knew at the time that the maker was an accommodation maker. Section 46." After referring to the provisions made in the Act as to how one primarily liable may be discharged, and contrasting those methods with those by which parties secondarily liable can be discharged, he said: "The Act establishes a liability on the part of an accommodation maker, which is not affected by an extension of time given by the holder to any other party to the note, even though as between such party and the accommodation maker a different relation may subsist in fact from that appearing on the face of the paper. The result is

to render somewhat more rigid the rights of the parties as
set forth in the written instrument, and so far as the holder
is concerned to establish liability to him upon a firm basis,
not easily shaken by parol evidence." He added: "This ap-
pears to be the view taken without exception by the courts of
other jurisdictions which have considered the point," and
concluded by referring to *Vanderford* v. *Farmers' Bank,
supra;* *Cellers* v. *Meachem,* 49 Ore. 186; 13 Ann. Cas. 997,
89 Pac. 426, 10 L. R. A. (N. S.) 133; *Wolstenholme* v.
*Smith,* 34 Utah, 300, 97 Pac. 329; *Bradley Engineering, etc.,
Co.* v. *Hayburn,* 56 Wash. 628, 106 Pac. 170, 134 Am. St.
Rep. 1127; *National Citizens Bank* v. *Toplitz,* 81 App. Div.
593, 81 N. Y. S. 422, affirmed on another ground 178 N. Y.
464, 71 N. E. 1; *Richards* v. *Market Exch. Bank Co.,* 81
Ohio St. 348, 90 N. E. 1000, 26 L. R. A. (N. S.) 99;
*Fritts* v. *Kirchdorfer,* 136 Ky. 643, 650, 124 S. W. 882.

In the note to that case (*Union Trust Co.* v. *McGinty*) in
Ann. Cas. 1913 C on page 528, the author says: "Under the
Negotiable Instruments Law it may be regarded as well set-
tled that the accommodation maker or acceptor is primarily
liable and is not discharged by any extension of time given
to the endorser, drawer or co-maker, for whose benefit he
became a party of the instrument, without regard to whether
the party suing on the instrument is a party thereto as a
payee, and had knowledge of the relation subsisting between
the accommodation maker and the principal debtor." In that
note the only case cited to the contrary of the doctrine an-
nounced in the Massachusetts and other cases is the one re-
ferred to in the brief of the appellant, *Fullerton Lumber Co.*
v. *Snouffer,* 139 Ia. 176, 117 N. W. 50. The appellant also
cited *Lewis* v. *Clay,* 67 L. J. Q. B. (N. S.) 224, where it
was said that the payee of a promissory note can not be a
holder in due course within the English Bills of Exchange
Act, but the appellant called attention to the fact that the
statement of LORD RUSSEL was said to be an *obiter* in *Herde-
man* v. *Wheeler,* 1 K. B. (1902) 367, 372, and added that
this latter case seems also to sustain the point. We do not

so understand it, as the opinion says: "On the whole, therefore, we are not prepared to hold that a payee of a note can never be a holder in due course; but it is, as it seems to us, just as unnecessary for us to decide that question as it was for the late Lord Chief Justice to do so on the case before him."

It is contended by appellant that the *Vanderford case* was decided without reference to the Negotiable Instruments Law, but that is not correct. Judge Burke first considered some of the decisions prior to that Act, referring to *Yates* v. *Donaldson,* 5 Md. 402, and to *Ives* v. *Bosley,* 35 Md. 262; *Owings* v. *Baker,* 54 Md. 82, and *Keyser* v. *Warfield,* 100 Md. 72 (the last three being cases of irregular endorsements), and after stating the principles announced in them, he said: "Assuming, *ex gratia,* that such a defense is now open to one who is primarily liable on a note against the payee, we are of the opinion that each of the special pleas for the reasons stated was fatally defective, and that the demurrer thereto was properly sustained," but immediately following what we have quoted from the *Vanderford case,* Judge Burke said: "But apart from this ground of objection, it seems clear that the Negotiable Instrument Law of 1898, Ch. 119 (Art. 13, secs. 13 to 208, inclusive, Code 1904), has so modified the prior law upon this subject as to preclude the defendant from setting up his suretyship against the payee of the note," and then referred to sections 15, 138 and 139, concluding that branch of the case by saying: "Since by the terms of the Act a person primarily liable on a negotiable instrument can only be discharged in one or the other of the particular ways specified in the Act, and since the defendant, William H. Vanderford, did not in either of his pleas, claim to have been discharged in either of the prescribed ways, it follows that upon this ground alone the demurrer to the pleas was rightly sustained."

The appellant contends that the Negotiable Instruments Act is not applicable to a suit between the original parties to an instrument, but in addition to the fact that that conten-

tion is answered by *Vanderford's case,* which was, as here, a suit by the payee who was still the holder of the note, and many other authorities, the Act itself is to the contrary. Section 14 of Article 13 provides that: "In this Act, unless the context otherwise requires; * * * 'Holder' means the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof." It therefore in terms provides that the payee may be a holder within the meaning of the Act. Necessarily there are some provisions in the Act which do not apply to a payee, if still the holder, and amongst others it may be conceded that some of those in reference to a "holder in due course" do not apply to a payee. But that seems to us to be quite apart from what we now have before us, for if it be admitted that the appellee is not a "holder in due course," as defined by the Act, it can not be denied that it is a "holder for value," as indeed the defendant's pleas show and the evidence proves. It is provided by Section 43 that, "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and any person whose signature appears thereto to have been a party thereto for value," and by section 45, that, "Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time." Then in Section 48, it is said: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other persons. Such a person is liable on the instrument to *a holder for value,* notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." These are unquestionably negotiable instruments, and when Section 138 prescribed how a negotiable instrument could be discharged it made no distinction between one held by "a holder in due course" and one held by "a holder for value." As we have already seen, *Vanderford's case* in terms decided that since the Act was passed a negotiable instrument could only be discharged, in so far as

one *primarily* liable is concerned, in one of the five methods named, and in that case the suit was on a note signed as these are, and held and sued on by *the payee.* The five methods of discharging the instrument, which of course included the discharge of a person 'on it who was primarily liable (*Union Trust Co.* v. *McGinty, supra*), refer to matters happening after the instrument is executed and delivered, and not to defects existing at the inception of the note, such, for example, as a want of consideration. In such case there can be no doubt that while a note is still in the hands of the payee that defense can be made, and if in the hands of a third party with notice, it can also be made. In such case the party is not "a holder in due course," as defined by section 71. Of course when a payee takes a note he knows the fact, if it be a fact, that there was no consideration, and so in case of failure of consideration, he knows the circumstances existing at the inception of the note, what it was given for, etc., and if the consideration fails, wholly or partially, he does not come within the definition of a "holder in due course" as given in section 71. But there is no question here about an absence or failure of consideration as provided for in section 47, but the question is, how can one who is by the Act *primarily* liable on these notes discharge that liability? The Act furnishes the answer, and this Court and most of the other courts which have passed on the question have said it can only be done in one of the five ways stated in the statute.

It can not be successfully contended that section 77 which says: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable," etc., could authorize the defense here made or any other defense not permitted by the Act. If that had been intended, a shorter way of announcing such a rule would have been to simply declare that "no note still held by the payee shall be deemed negotiable or subject to this Act," but the Legislature not only did not say that, but distinctly included in section 14, quoted above, a payee as a

holder within the meaning of the Act. The appellant has cited a number of cases governed by the common law, and not by a statute like this, in which sureties were released, but there can be no doubt about the question at common law. In this case, however, we are controlled by the Negotiable Instruments Act, which we have said is applicable, and consequently the effect of it is that there is no such relation as principal and surety existing between these parties, so far· as the appellee is concerned. Mr. Jamesson stood in the same relation to the bank that Mr. Cross did by reason of the Act, and it could not be pretended that the latter would have been discharged, if he had made such tenders as the pleas alleged Mr. Jamesson did.

It would seem to be clear that the appellant could not make the defense in a suit at law by way of pleas on equitable grounds. It is well settled in this State that such a plea is not good, unless it sets up facts which would entitle the defendant to relief in equity against a judgment at law, if recovered, as provided in section 86 of Article 75. It can scarcely be contended that the appellant could have had such relief against a judgment recovered against him. It would be a very unreasonable appeal to a Court of Equity, if one, who was primarily liable under a statute, asked that the judgment be declared invalid, because at common law the defendant would have been a surety, while under the statute he is treated as a principal, just as the maker who got the money is. It would in effect permit a Court of Equity to repeal a statute which had been passed for the purpose of changing the common law in respect to this and other matters, as well as to have uniformity in this branch of the law in which so many people of the country are interested. It may be that when the bank refused to accept the money he could have obtained relief in equity, through a mandatory injunction or some such remedy, requiring the bank to turn over the notes to him upon payment of the amount due, if he proved such facts as are alleged in his pleas, so that he could

proceed against the other makers, but as that is not before us, it is best not to say more on that question. We are satisfied, however, that the demurrers to the pleas by way of defense on equitable grounds were properly sustained for the reason just mentioned, as well as for the other ground we have stated—that under the statute appellant was not discharged.

There is a marked absence of any evidence in this case to show that the appellee accepted the appellant as surety, although evidence was admitted as to who received the proceeds of the notes, of the tenders and other facts set out in the pleas. Even if appellant's contention—that the bank's accepting Mr. Jamesson as surety was sufficient to establish his relation to these notes as merely a surety—could be allowed under this statute, that does not simply mean that if the holder of the note knew that the defendant was a surety, as between him and the one who got the money, he "accepted" him as such by taking the note, but it means that the holder must have agreed to treat him as surety, or something to that effect. As we have seen, by section 48 of Article 13, an accommodation party is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party. So of course that knowledge is not sufficient to show that the holder "accepted" the accommodation party as a surety, in the sense contended for by the appellant.

Then it is alleged that the appellant thought that after the refusal of the appellee to accept the money it intended to look to the other parties for payment, but section 141 of Article 13, provides that: "The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument * * *. *A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable*

*thereon.''* See *Whitcomb* v. *Nat. Ex. Bank*, 123 Md. 612, where JUDGE URNER considered that section at some length. The appellant, therefore, had no right to suppose that he would not be looked to for the payment of the notes. There are other questions in the case which were argued by the appellant, such as his right to prove the notes before the referee in bankruptcy, but that would involve an investigation as to whether he would have had the right to take part in the proceedings, unless he surrendered all interest in the deed of trust he claimed was given to secure him and others. See section 56, *Bankrupt Law.*

Inasmuch as we have no doubt about the main questions referred to, it will not be necessary to discuss further any of the minor ones. So, without discussing the prayers separately, what we have said is sufficient to indicate our views, and to show that in our opinion there was no error in the rulings on the demurrers or the prayers, and the judgment will be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*