## M. R. JOHNSTON COFFEE COMPANY *v.* GEORGE W. PAGE, Receiver.

[No. 16, October Term, 1931.]

504

Decided December 4th, 1931.

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Frank B. Ober* and *Charles B. Hoffman,* with whom were *Janney, Ober & Williams* on the brief, for the appellant.

*Morris Rosenberg,* with whom was *Herbert Levy* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The question in this case is as to the right of an indorser to set off its deposit in an insolvent bank against its liability on notes held by the bank, maturing after the receivership; the makers having signed for the accommodation of the indorser. The appeal is from a decree dismissing the petition, all of the facts of which were admitted by the answer except the charge of insolvency of the makers, which, by agreement, was abandoned.

On December 10th, 1930, George W. Page, bank commissioner of Maryland, was appointed receiver of the Chesapeake Bank of Baltimore. At the time of his appointment there were among the assets of the bank two notes made by M. R. Johnston and M. Grace Johnston, indorsed by the M. R. Johnston Coffee Company, Inc., one of the notes, for $1,100, dated September 9th, 1930, maturing January 9th, 1931, the other, for $500, dated November 22nd, 1930, ma-

turing December 22nd, 1930. The loans were applied for by the appellant, the M. R. Johnston Coffee Company, which was credited with the proceeds, the makers receiving none of the money advanced. The bank required the notes so to be made and indorsed. The appellant has on deposit in the insolvent bank $1,041.06, which it has requested the receiver to apply to the notes so indorsed by it, and, upon the refusal of the appellee to credit the appellant's deposit against the notes, a petition was filed praying an order directing the credit to be made.

The question raised by the petition has not been before this court, the nearest approach to it being the case of *Colton v. Drovers' Bldg. Assn.,* 90 Md. 85, 45 A. 23, wherein it was decided that a depositor is entitled to set off his deposit against his promissory note held by a bank, even though the note does not mature until after the bank has gone into a receivership. In the opinion (page 92 of 90 Md., 45 A. 23, 25) it was said that the note "was a debt already incurred by the appellee, and payable to the bank when due." An indorser is not indebted on the obligation until the note matures, so that the relation of debtor and creditor did not run concurrently with the note, as in the case just cited. The appellant insists in this case that, because the indorser is the real party in interest, the same rule should be applied to it as to the maker of the note in the *Colton* case, even though the Uniform Negotiable Instruments Law (Code, art. 13, sec. 48) makes no distinction between an accommodation maker and one for value so far as the holder is concerned. In support of this contention, it urges this court to accept the authority of the decision in *Building & Engineering Co. v. Northern Bank of New York,* 206 N. Y. 400, 99 N. E. 1044, 1045, in which the facts and procedure are identical with those of this case.

In that case the court, in distinguishing between the facts of the case and the provisions of the Uniform Negotiable Instruments Law, which was in force in New York, said: "It nowhere appears from the Negotiable Instruments Law, or from anything that can be considered in determining the

intention of the Legislature, that said sections 3 and 55 (sections 15 and 48, article 13 of the Maryland Code) were intended to prevent the courts from determining, in equity, all questions between an insolvent holder of a note and the one primarily liable for the indebtedness on the instrument as a matter of fact, whether maker or endorser"; and: "If we assume that in an action at law the makers of the note must arbitrarily be treated as primarily liable thereon, and the plaintiff as secondarily liable thereon, it does not prevent the court, in an action in equity, from determining and enforcing the rights of the parties as the same are found as a matter of fact." See also *Winne v. Winne,* 166 N. Y. 263, 271, 59 N. E. 832; note, 25 A. L. R. 950. Compare *Curtis v. Davidson,* 215 N. Y. 395, 109 N. E. 481.

But, while this court has never had before it the precise question which this case presents, it has had occasion to express its opinion and to declare its position on the proposition that a court of equity may be appealed to to give relief where the real relations of the parties to a note are not what, from the instrument, they appear to be. In *Jamesson v. Citizens' National Bank,* 130 Md. 75, 81, 90 A. 994, 996, quoting with approval from *Union Trust Co. v. McGinty,* 212 Mass. 205, 98 N. E. 679, it is said: "Care should be taken to adhere as closely as possible to the obvious meaning of the act, without resort to that which had theretofore been the law of this commonwealth, unless necessary to dissolve obscurity or doubt, especially in instances where there was a difference in the law in the different states. Approaching the act from this point of view, it is apparent that no relation of principal and surety is established or contemplated by any of its sections. It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, whether for accommodation or otherwise, is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. * * * The act makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instru-

ment signed. The fact that one is an accommodation maker gives rise to a duty no less or greater or different to the holder for value than that imposed upon a maker who received value. This is expressly provided by the act, even though such holder knew at the time * * * that the maker was an accommodation maker." · And this court (page 86 of 130 Md., 99 A. 994, 998), in expressing its opinion, said: "It would be a very unreasonable appeal to a court of equity, if one, who was primarily liable under a statute, asked that the judgment be declared invalid, because at common law the defendant would have been a surety, while under the statute he is treated as a principal, just as the maker who got the money is. It would, in effect, permit a court of equity to repeal a statute which had been passed for the purpose of changing the common law in respect to this and other matters, as well as to have uniformity in this branch of the law, in which so many people of the country are interested." See also *Vanderford v. Farmers' & Mechanics' National Bank,* 105 Md. 164, 167, 168, 66 A. 47.

It will thus be seen that this court has disapproved any efforts to assert any other relationship or to put liability on any other basis than appears from the plain language of the act, and from the instrument itself. As between the parties to the paper, their relationship to it, and their liability on it, they all have their remedies.

Under the law the appellee, receiver, can proceed against the maker, the indorser, or both. If we were to entertain the petition, it would take away this right, at least to the extent of the indorser's deposit, and thus the remedy to be applied or denied would depend on the speed with which the respective parties got into court. If the receiver were to sue the indorser at law, we would have the situation presented in *Curtis v. Davidson, supra,* and the question might there arise as to whether the appellant could set off his deposit against his liability as indorser, but that would be another and a different case, as to which we express no opinion.

The appellant suggests that, because a negotiable instrument may be discharged "by payment in due course by the

508

party accommodated, where the instrument is made or accepted for accommodation" (section 138[2], article 13 of the Code), the appellant should be permitted to do what the maker could do, that is, pay the note and receive credit for its deposit. Of course, payment by the accommodated indorser would discharge the accommodation maker, but unless the notes are paid by the indorser, the receiver still has and should have recourse against the makers of the notes who are primarily liable under the 48th section of the act. The parties themselves cannot by their own acts affect the rights of the holder; they remain as they appear from the face of the notes and the indorsements thereon.

In our opinion, the indorser (appellant) cannot invoke the aid of a court of equity to establish a relationship or liability different from that appearing on the notes, and in this proceeding is not entitled to an order for the set-off claimed.

*Decree affirmed, with costs.*