## MILLER v. HOCKLEY et al.
### No. 3886.

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1936.

Isaac Lobe Straus, of Baltimore, Md. (J. Wallace Bryan, of Baltimore, Md., on the brief), for appellant.

George Moore Brady and Hilary W. Gans, both of Baltimore, Md. (James U. Dennis, of Baltimore, Md., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a suit instituted by the appellees, herein referred to as the plaintiffs, against the appellant, herein referred to as the defendant, in the District Court of the United States for the District of Maryland, in October, 1933, to recover on several promissory notes aggregating $628,125, with interest. The appellees had been appointed, and duly qualified, as receivers of the Davison Realty Company, a corporation, and the notes were payable to that corporation. By leave of court, the receivers were authorized to institute suit against the defendant on said notes.

The defendant demurred to the declaration on the ground that the court was without jurisdiction; that the plaintiffs did not have authority to institute said suit; and that the suit was instituted without authority of law; which demurrer was overruled. The defendant then filed three pleas, the first and second of which were the general issue pleas, and the third, a special plea alleging that all the amounts of money mentioned in the promissory notes sued on were advanced and paid to, and for the use, avail, and benefit of, the Davison Chemical Company, a corporation, and were not advanced or paid to the defendant for his own use, but solely and wholly for the purpose of purchasing stock of the Davison Chemical Company, which company owned all of the stock of the Davison Realty Company, and that the defendant had applied and expended said money for that purpose. The third plea further alleged that the Davison Realty Company and the Davison Chemical Company fully understood and had agreed that said sums of money were not advanced to and used for the account of the defendant.

Plaintiffs demanded particulars of the defendant's first and second pleas, and demurred to the third plea, which demurrer was overruled by the court below. Answering the plaintiff's demand for the particulars on his first and second pleas, defendant alleged that he did not owe the receivers the amount, or any part thereof claimed and that the Davison Chemical Company had been and was liable to the Davison Realty Company or its receivers for the whole of said amount of said claim; that no consideration passed from the realty company to the defendant for the notes mentioned, or any of them, or for the sums which said notes

represented, but that the whole of such consideration was for the benefit of the chemical company; and giving other particulars of the transaction as the defendant claimed it to have been.

Plaintiffs then demurred to the defendant's first and second pleas and also filed motions to strike out parts of the defendant's bill of particulars, which said motions were overruled by the court with leave to raise the questions during the course of the trial. The court overruled the plaintiffs' demurrer to the particularized first and second pleas and issue was then joined on the pleas. The case then went to trial and the jury, after the charge and instructions of the court, returned a verdict for $779,812.69 for the plaintiffs, with interest and costs.

The Davison Chemical Company has been, for many years, a large industrial corporation engaged in the fertilizer business, owning and operating, either directly or through subsidiaries, besides its main plant, which employed a large number of people, plants in many eastern states. It owned a very large tract of land in the neighborhood of its main plant at Curtis Bay, Baltimore, Md. In the year 1928 it caused a corporation to be organized under the name of the Davison Realty Company and formed certain plans for the development of the land and conveyed to the realty company about 300 acres of land. The defendant had been, for many years, the president and a director of the chemical company and, after the formation of the realty company, became president and a director thereof. The realty company had no cash or assets other than this land. The capitalization of the realty company was fixed at 5,000 shares of no par value stock, which made up the whole of its capital stock, and the chemical company took all of this stock for the land which it had conveyed to the realty company. The officers of the two corporations were virtually the same and the chemical company controlled and dominated the realty company through a board of directors and officers selected, by the chemical company, from its own organization.

In the year 1930 negotiations were begun looking to the sale of securities proposed to be issued by the realty company, the proceeds of which sales were to be used, at least in part, for the development of the land owned by the realty company. As a result of these negotiations, certain brokers and bankers agreed to sell a note issue to the public and it was agreed to give them, as a part of their compensation in the transaction, an option to buy 30,000 shares of the stock of the chemical company at a beginning price of $30 increasing from year to year thereafter until the option price ran up to $75 a share. It was further agreed, as a part of the financial plan, that the notes of the realty company should carry what were called option warrants, which gave the privilege to the holder of each $1,000 par value of the stock of the realty company notes to subscribe to 10 shares of the stock of the chemical company at the rate of $30 a share up to September 30, 1931, and at an increased rate for subsequent years.

Securities of the realty company aggregated the principal amount of $2,000,-000, and these notes were guaranteed by the chemical company. The proceeds of the issue of the realty company notes amounting, less commissions and expenses, discount, etc., to $1,849,000 were paid to the realty company by check dated October 28, 1930, which check was in turn indorsed by the realty company and deposited in the account of the chemical company and an entry made on the books of the chemical company showing a credit to the realty company of this amount. On October 30, 1930, at a meeting of the directors of the realty company, two days after the receipt of the purchase price of its notes, the following minutes were entered and the following resolution passed:

"The Treasurer called the attention of the Board to the fact that the funds in the Company's treasury resulting from the sale of $2,000,000 par value of ten year Debenture Notes were in excess of any immediate needs, after advances made to it by the Davison Chemical Company had been repaid, and recommended that loans to the extent of $1,500,000 be made. An application for loan of $500,000 had been received from Mr. C. Wilbur Miller, and a loan of $1,000,000 from the Davison Chemical Company. After full discussion the following resolution, duly made and seconded, was unanimously passed:

" 'Resolved that the Treasurer of the Company be and is hereby authorized to loan the amount of $500,000 from the Company's treasury to Mr. C. Wilbur Miller on his demand note, and the further sum of $1,000,000 from the Company's

treasury to the Davison Chemical Company on its demand note, both notes to bear interest at the rate of 7 per cent per annum.' "

The theory upon which the resolution was passed was that all the money borrowed by the realty company would not be used, at least immediately, for the purpose of developing the land it owned and that the surplus would be lent at interest. On various dates from October 27, to December 23, 1930, the defendant received checks from the chemical company in the total amount of $628,-125. On the same dates on which he received these various amounts the defendant delivered to the treasurer of the realty company (who was also the treasurer for the chemical company) his demand promissory notes payable to the realty company for the respective amounts received. As the chemical company issued these checks to the defendant, it charged the realty company with the amounts paid. On September 24, 1931, the defendant submitted to the board of directors of the realty company and the board passed the following resolution:

"Whereas, the Board has heretofore authorized an advance of $500,000 to C. W. Miller, with interest at the rate of 7% per annum, said advance having been authorized for the purpose of putting Mr. Miller in funds to purchase shares of the Davison Chemical Company to cover stock option warrants and bankers' options issued and guaranteed by that Company in connection with this Company's debenture notes; and

"Whereas, subsequent to said authorization, this Company has advanced a total of $628,125 to Mr. Miller for the aforesaid purpose:

"Be it resolved, that the action of the Company in advancing to C. W. Miller the sum of $128,125 in excess of the amount previously authorized be, and the same is hereby ratified and approved."

On September 29, 1931, the defendant presented during a meeting of the directors of the Chemical Company, the following resolution:

"Resolved that the loans aggregating $625,125 appearing on the books of the Davison Realty Company as having been made to C. W. Miller were in fact loans to this Company and that the officers of this Company take such steps as may be necessary to have this Company assume said obligations and to have the books and records of both Companies to conform herewith."

There was some objection to the passage of this resolution and it was not passed. At the trial there was testimony to the effect that the defendant said, "Well, if the Board is not unanimous in doing this thing, I will assume myself personal responsibility," and then withdrew the resolution.

On October 14, 1932, in response to a formal demand for the payment of the amounts mentioned in his notes defendant replied that so far as he was advised, the advances had never been determined by either company to have been advances made to him personally, for which he, personally, would be liable, and that it was impossible for him to meet the demand within the time limit fixed, even though he conceded his personal liability.

The chemical company became involved and the plaintiffs were appointed receivers for it and on July 24, 1933, an order was entered making them also receivers for the realty company and the notes given by the defendant came into their possession as such receivers.

Two main questions are involved, first, whether the court had jurisdiction, and, second, whether the loan in question was one for which the defendant was personally liable or whether it was in fact made to him with the understanding that it was in effect a loan to the chemical company.

As to the first question, it is contended on behalf of the defendant that the appointment of the receivers for the realty company was irregular; that the bill applying for the appointment of the receivers did not contain the necessary allegations to sustain such appointment; and that for other irregularities appearing upon the face of the record the appointment of the receivers was void.

A study of the record convinces us that the receivers for the realty company were properly appointed. We discuss a somewhat similar question in Miller et al. v. Pyrites Company, Inc., et al., 71 F.(2d) 804, where the appointment of the plaintiffs as receivers for the chemical company was involved, and there we held there was no error in the appointment. This question is, however, immaterial.

As was said in Lydick v. Neville (C.C.A.) 287 F. 479, 482:

"Whether the court erred in holding that the bill stated a proper cause for the appointment of a receiver does not affect its jurisdiction, so as to permit a collateral attack on its interlocutory order. For even if there was error, and we do not believe there was, it could only be corrected by appeal."

That the action of the court cannot be attacked collaterally is virtually the unanimous holding in the decisions on this point. Hartford Life Insurance Company v. Johnson (C.C.A.) 268 F. 30. See, also, Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763.

In Grant v. A. B. Leach & Co., 280 U.S. 351, 50 S.Ct. 107, 74 L.Ed. 470, will be found a discussion of this point holding that the appointment of the receivers, if error, could only be corrected on direct appeal and could not be attacked collaterally.

The defendant knew of the appointment of the receivers for the realty company and made no objection to it until suit was brought against him by the receivers upon the notes here involved. He cannot now be heard to raise this point for the first time. The court below had jurisdiction of the cause.

When we come to consider the question as to whether the loan made to the defendant was one for which he was personally liable, it is clear that the judgment of the court below must be affirmed. It is strongly contended on behalf of the plaintiffs that they were entitled to judgment on the pleadings and it would seem that this contention is sound. The rule in Maryland is that parol evidence cannot be received to vary the terms of a written instrument and that in the absence of fraud, failure of consideration, or the existence of a condition precedent to its becoming effective, evidence cannot be heard to vary or contradict the terms of a promissory note, even though it is still in the hands of the original payee and no interest of an innocent third party has attached thereto. Vanderford, Executrix, v. Farmers' & Mechanics' National Bank of Westminster, 105 Md. 164, 66 A. 47, 10 L.R.A.(N.S.) 129; M. R. Johnston Coffee Co. v. Page, Receiver, 161 Md. 503, 157 A. 297, 82 A.L.R. 662; Jamesson v. Citizens' National Bank, 130 Md. 75, 99 A. 994, Ann.Cas. 1918A, 1097; Crothers v. National Bank, 158 Md. 587, 149 A. 270.

A number of state decisions lay down the same rule and it appears to have been uniformly adhered to by the federal courts.[1]

In Wagner v. Kohn (C.C.A.) 225 F. 718, it is expressly held that parol evidence cannot be introduced to show that a person other than the maker was to pay the note executed and signed by him. We discuss a similar question in Kendrick v. Speck (C.C.A.) 67 F.(2d) 295.

It is not necessary, however, to base an affirmance of the judgment upon this point for the reason that the jury decided the questions of fact against the defendant and we think properly so decided.

The defendant is an experienced business man and had been, for many years, the president and the dominating factor of the chemical company as he was also the president of the realty company and, until the two companies became financially involved, seemed to have had complete authority in the management of both companies. The realty company authorized two loans at the same time, one to the chemical company of $1,000,000 and one to the defendant of $500,000. Had both of these loans been made in reality to the chemical company, as is contended by the defendant, there would have been no reason to make one loan to the chemical company and another to the defendant. That the defendant intended to make himself personally liable on the notes he gave seems conclusively proven, not only by the form of the notes executed, but by the circumstances surrounding the transaction. The defendant did not use the money received by him as a consideration for the notes for the purposes of the chemical company, but the evidence shows that he deposited the entire amount to his personal credit with

1 Specht v. Howard, 16 Wall. 564, 21 L. Ed. 348; Martin v. Cole, 104 U.S. 30, 26 L.Ed. 647; Forsythe v. Kimball, 91 U.S. 291, 23 L.Ed. 352; Brown v. Spofford, 95 U.S. 474, 24 L.Ed. 508; Burnes v. Scott, 117 U.S. 582, 6 S.Ct. 865, 29 L.Ed. 991; White v. Bank, 102 U.S. 658, 26 L.Ed. 250; Simonton v. Shaw (C.C.A.) 246 F. 683; Dutton v. Bank (D.C.) 244 F. 236; Bromfield v. Trinidad Nat. Inv. Co. (C.C. A.) 36 F.(2d) 646, 71 A.L.R. 542, and authorities there cited.

984

his stock brokers. It was only after the stock of the chemical company, in which the defendant was speculating extensively, became so depreciated in value as to make it questionable whether it was worth anything that the defendant even discussed tendering the chemical company the stock which he claimed to have purchased for it with the money borrowed by him from the realty company.

It may have been that the defendant expected the chemical company to relieve him of his liability on the notes, but this the chemical company never did and this was the defendant's personal risk. Experienced, as he was, in business he undoubtedly knew that he was making himself personally liable when he signed the notes and received the money.

The defendant's action when he found that the chemical company would not relieve him of his liability on the notes shows conclusively that he realized his personal responsibility, but hoped to be relieved of it—a thing that he did not succeed in accomplishing.

■ The trial judge, after a full and complete hearing, submitted to the jury the question of fact as to whether the defendant's contention as to these notes was true and the jury found against the contention. The charge of the court below in submitting the case to the jury was fair to the defendant. The judge instructed the jury that if the defendant had proven to their satisfaction that the notes were really the notes of the chemical company and not his personal liability, or if they should find from the evidence that at the time the notes were executed it was the understanding that the chemical company was to assume the payments for them and relieve the defendant and that this had been done, they should find for the defendant. If there was any error at all in the court's charge, the error was made in favor of the defendant—a matter of which he certainly cannot complain.

The defendant signed the notes in question in a form that made him personally liable for their payment; there was no fraud, failure of consideration, or condition precedent attached to the execution of the notes; the defendant received the money on the notes and used it for his own personal purposes; and the jury found that there was no understanding or agreement that the notes were executed on behalf of any one other than the defendant and that they had not been assumed by any one.

The judgment of the court below is accordingly affirmed.