## VAN WINKLE *v.* CROWELL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA.

No. 23.   Argued and submitted, March 30, 1892. — Decided October 31, 1892.

By a contract in writing V. agreed to make for B. certain cotton-seed oil-mill machinery, at a fixed price.  It was made and shipped to B. and not paid for.  B. put it into use and afterwards executed to L. a mortgage covering it.  V. then brought a suit in detinue against C. a bailee of L. for the property.  L. was made a co-defendant.  After the mortgage was given, B. executed to V. notes for what was due to V. for the purchase money of the machinery, which stated that the express condition of the delivery of the machinery was that the title to it did not pass from V. until the purchase-money was paid in full.  *Held* that the terms of the written contract could not be varied by parol evidence.

The condition of the title to the machinery at and before the giving of the mortgage was a conclusion of law to be drawn from the undisputed facts of the case.

It was proper to direct the jury to find for the defendant.

THIS was an action of detinue brought November 8, 1886, in the Circuit Court of Bullock County, Alabama, by E. Van Winkle and W. W. Boyd, copartners as E. Van Winkle & Co., against Canty Crowell, to recover certain machinery belonging to and constituting a cotton-seed oil mill.

The plaintiffs being citizens of Georgia and the defendant a citizen of Alabama, the suit was removed by the latter into the Circuit Court of the United States for the Middle District of Alabama.   After its removal, and in November, 1887, the latter court allowed Emanuel Lehman, Meyer Lehman, Joseph Goeter, and John W. Durr, composing the firm of Lehman,

Durr & Co., and Ignatius Pollak, doing business under the firm name of Pollak & Co., all citizens of New York and Alabama, to make themselves parties defendant to the suit, and they filed pleas. The pleas were to the effect that Crowell did not unlawfully detain the property sued for, as alleged in the complaint; and that it was not, at the time of the commencement of the suit, and had not since been, and was not, at the time of putting in the pleas, the property of the plaintiffs, but of the defendants pleading. The case was tried before a jury, which rendered a verdict for the defendants; and there was a judgment for them, with costs. The plaintiffs brought the case here by a writ of error.

The controversy was in fact one between the plaintiffs on one part, and Lehman, Durr & Co. and Pollak & Co. on the other part. Lehman, Durr & Co. claimed the property under a mortgage executed to them, December 4, 1885, by Samuel S. Belser and Langdon C. Parker, and their wives, to secure a debt of $30,000, with interest, and covering one and three-fourths acres of land in Bullock County, on which was an oil mill, together with the machinery therein, other land in Montgomery County, and certain other personal property. Pollak & Co. claimed under a mortgage executed to them January 2, 1886, to secure a debt of $15,000, and covering land in Montgomery County, the oil-mill land in Bullock County, the improvements thereon and appurtenances belonging thereto, and other personal property. At the time suit was brought against Crowell, the property in question was in his possession as bailee of the mortgagees. The property had been manufactured by the plaintiffs for Belser and Parker under a written contract signed by the latter, and accepted by the former, in the terms set forth in the margin.[1] At the date of the paper,

---

[1] L. C. Parker.                 E. B. Gray.                 S. S. Belser.
Parker, Gray and Belser, dealers in general merchandise.

MITCHELL'S STATION, ALA., *March* 28, 1885.

Messrs. E. Van Winkle & Co., Atlanta, Ga.

GENTS: You will please ship to us, at Mitchell's Station, Ala., the following oil-mill machinery, to wit, for which we agree to pay you the sum of twelve thousand five hundred dollars ($12,500):

one of the plaintiffs visited Belser and Parker, and himself wrote the paper, which Belser and Parker signed and delivered to him. No other agreement was made than the one contained in that paper.

By that contract, the plaintiffs obliged themselves (1) to ship to Belser and Parker the machinery named therein; (2) to pay the freight thereon to Mitchell's Station, the place to which it was to be shipped; and (3) to furnish the mechanics to erect the machinery there. Belser and Parker, by the terms of the contract, agreed (1) to furnish all rough labor and the board of the men engaged in the work, and (2) to pay $12,500 for the machinery, namely, $3000 on the receipt of the bill of lading, $4750 on November 1, 1885, and $4750 on March 1, 1886, with interest at eight per cent from the date of starting the mill.

There was a great deal of delay in shipping the machinery, and much complaint on the part of Belser and Parker. The building in which the machinery was placed was erected by Belser

---

One set of oil-mill machinery complete, with capacity to work thirty tons of cotton-seed per day, as follows:

4 hydraulic presses.

4 steam-heaters.

2 hullers.

4 linters, feeders, and condensers.

All line and centre shafting, all steam and oil pipes, all pulleys, hangers &c.; one hydraulic pump of six plungers, one oil pump, one cake breaker & cake grinding mill, one sett of crushing rollers, one sett of separating machinery, all elevators and conveyers, three seventy-saw gins, with feeders and condensers; two cotton presses, all shafting for gins and presses, all pulleys complete, all belting but main belt for oil mill, belting for gin-house not included — this to mean, in fact, all machinery and appurtenances necessary to operate an oil mill and gin-house of above-described capacity. It is agreed that you are to lay down the mach'y at Mitchell's Sta. and pay all freight and furnish the mechanics to erect the same; we to furnish all rough labor and board of men. We agree to pay you for machinery as follows:

$3000.00 on receipt of bill of lading.

$4750.00 (four thousand seven hundred and fifty dollars) on the first day of November ensuing, and like amount, $4750.00, first day of March ensuing, with interest at 8 per cent from date of starting mill.

Yours respect'y, etc., etc.,     BELSER & PARKER.

and Parker after the contract for the machinery was made. It was constructed for the purpose of being used as a cotton-seed oil mill; and the machinery furnished was such as was essential for only such a mill. The machinery was manufactured by the plaintiffs at Atlanta, Georgia, and at various times was placed by them on railroad cars at Atlanta, consigned to Belser and Parker at Mitchell's Station, Alabama. During the progress of the work, Belser and Parker paid to the plaintiffs $2500 on their drafts drawn according to the contract, and also paid out for freight and other expenses, which the plaintiffs had agreed to pay, sums amounting to $500. The machinery was in place so that the mill could be operated prior to December 1, 1885; and Belser and Parker commenced operating it in November, 1885. There was some evidence that after December 10, 1885, the plaintiffs supplied some additional machinery, but the evidence did not identify it. The land on which the building stood in which the machinery was placed belonged to Belser and Parker.

On December 4. 1885, the date of the mortgage to Lehman, Durr & Co., Belser and Parker were indebted to that firm in debts which were then due. They obtained from Lehman, Durr. & Co. an extension of those debts and also further advances, making a total indebtedness of $30,000, for which the mortgage was given. It was recorded in the proper office on the 3d of February, 1886, within three months after its execution. On the 2d of January, 1886, the date of the mortgage to Pollak & Co., Belser and Parker owed to Pollak & Co. debts which were past due; and an agreement was then made for their extension, and new advances were made, the whole amounting to $15,000. The mortgage was duly recorded on February 4, 1886.

On the 11th of December, 1885, one of the plaintiffs visited Belser and Parker, and with one of the latter inspected the mill. It was agreed between them that certain additional machinery should be provided, and other portions changed, but what portions does not appear; and that the balance due for the machinery should be settled by three notes, dated December 11, 1885, and signed by Belser and Parker, one for

$1500, with interest at eight per cent per annum, due February 1, 1886; a second of like tenor for $3500, due March 1, 1886; and a third for $4633.52, due December 1, 1886. The first one of the three notes read as in the margin,[1] and the others corresponded *mutatis mutandis.*

*Mr. W. A. Gunter* and *Mr. John D. Roquemore,* for plaintiffs in error, submitted on their brief.

The property sued for was personal. There was evidence tending to show that it had no such attachment to the land as to make it a part of the realty, which, of course, on the unqualified direction given to the jury to find for the defendants, must be taken as true in favor of the plaintiffs in error.

But, independently of this, the rule is that personal property does not become realty even in favor of mortgagees or purchasers, if the agreements between the vendor of the personalty and the owner of the land preserves as between them, its character as personalty, as was the case in this instance. *Ford v. Cobb,* 20 N. Y. 344; *Russell v. Richards,* 1 Fairf. 10 Maine, 429; S. C. 25 Am. Dec. 254; *Tifft v. Horton,* 53 N. Y. 377; *Sisson v. Hibbard,* 75 N. Y. 542; *Globe Marble Co. v. Quinn,* 76 N. Y. 23; *Foster v. Mabe,* 4 Alabama, 402; S. C. 37 Am. Dec. 749; *Harris v. Powers,* 57 Alabama, 139.

The written order given by Belser & Parker was a mere proposition; it did not contain the contract on the part of

---

[1] $1500.00     PIKE ROAD, ALA., Dec. 11th, 1885.

On or before the first day of February, 1886, we promise to pay to E. Van Winkle & Co. or order fifteen hundred and 00-100 dollars, for value received, with interest from date until paid at the rate of eight per cent per annum, and also all costs of collection. The benefit of any and all homestead or exemption laws is waived as to this note. The above is for purchase-money of one cotton-seed oil-mill machinery built at Mitchell's Station, Ala., which E. Van Winkle & Co. have this day agreed to sell to Messrs. Belser & Parker, of Pike Road, Ala.; and it is the express condition of the delivering of the said property that the title to the same does not pass from E. Van Winkle & Co. until the purchase-money and interest is paid in full.

In testimony whereof     have hereunto set     hands and seal.

Payable at     BELSER & PARKER. [SEAL.]

Van Winkle & Co., and as there was no writing showing it, parol evidence was the only source of information open.

But even if the order expressed the whole arrangement and contract, it is plain that it would be competent to prove by parol, when the machinery was accepted by the purchasers as their property, and that it had the conditions stipulated for in the contract, and likewise to explain the character of the possession prior to acceptance by the vendees.

No specific machinery was bought so as to pass the property, but it was all to be manufactured, and was to be a complete set, and to possess the capacity of working thirty tons of cotton seed per day. These "conditions" necessarily operated to retain the property in the vendors until the vendees accepted the machinery, with the vendors' consent, as their property.

Notwithstanding the machinery may have been exactly conformable to the stipulations of the contract, it would not, under such agreement, belong to the vendees until there was a meeting of the minds of the vendors and vendees on the point of tender by one and acceptance by the other. And this, notwithstanding the possession of the machinery may, prior thereto, have been with the vendees. *Cleveland Rolling Mill* v. *Rhodes*, 121 U. S. 255.

There was an unqualified right therefore, on the part of the plaintiffs in error, to show by parol when there was an actual acceptance of the property in the goods by the vendees, and to explain the character and purpose of their prior possession. And the court evidently committed an error in denying this right.

The mortgage to Lehman, Durr & Co. being made on the 4th December, 1885, prior to the passing of the property in the machinery to Belser & Parker, which took place on the 11th December, 1885, gave no right against the plaintiffs in error, and was no defence to their action.

The mortgage to Pollak & Co., in January, 1886, after Belser & Parker had acquired the conditional title, dependent upon the payment of the purchase-money to the plaintiffs in error, gave them only the title of Belser & Parker. There is no such thing as a *bona fide* purchase of personal property, so

as to defeat the legal title.   *Fairbanks* v. *Eureka Co.*, 67 Alabama, 109; *Sumner* v. *Woods*, 67 Alabama, 139; *Harkness* v. *Russell*, 118 U. S. 663; *Telegraph Co.* v. *Davenport*, 97 U. S. 369, 372; *Fosdick* v. *Schall*, 99 U. S. 235.

*Mr. H. C. Tompkins* for defendants in error.

MR. JUSTICE BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

The plaintiffs rely for a recovery of the property on title claimed under the three notes.   All of the machinery except a few pieces, which were not pointed out by the evidence, had been received and was in use by Belser and Parker prior to December 1, 1885; and no work of construction was done after the latter date on the mill or the machinery.   Testimony was given by E. Van Winkle, one of the plaintiffs, that they did not turn over the machinery to Belser and Parker (otherwise than by shipping it and permitting Belser and Parker to operate it) until upon the settlement made after such inspection in December, 1885; and that Belser and Parker, prior to that time, did not accept the machinery as a compliance with the contract, and then only accepted it conditionally upon the plaintiffs' supplying and changing certain parts of the machinery.   That testimony was admitted against the objection of the defendants, and then on their motion was excluded; and to the latter action of the court the plaintiffs excepted.

The same witness testified that the machinery was manufactured under a guarantee, and that the plaintiffs permitted its operation by Belser and Parker in order that it might be fully tested.   That testimony was objected to when offered, but was admitted, and was then excluded on motion of the defendants; to which action of the court the plaintiffs excepted.

It was also testified that, under the terms of the contract for the machinery, the plaintiffs were to erect it, but the testimony, on motion of the defendants, was excluded on the ground that the written contract was the evidence of what

the plaintiffs agreed to do. To that ruling of the court the plaintiffs excepted.

All that testimony, we think, was properly excluded. E. Van Winkle testified that he made no contract with Belser and Parker except the one contained in the written order from them which he accepted. That contract contained no guarantee, except the implied guarantee that the machinery should be reasonably fit for the uses for which it was sold. It contained an express direction to the plaintiffs to ship the machinery to Belser and Parker at Mitchell's Station, Alabama, and an express provision that the plaintiffs were to furnish a specified part of the force necessary to erect the machinery. The plaintiffs were never in possession of the mill.

The condition of the title to the machinery, on and prior to December 4, 1885, was a conclusion of law, to be drawn from the undisputed facts of the case; and the witness could not testify to such legal conclusion. The contract contained no stipulation that Belser and Parker were to be allowed to test the machinery before accepting it. Moreover, any provisions in regard to erecting or testing the machinery would have been for the benefit of Belser and Parker, and could have been waived by them. They had a right to accept it without testing it, and even before its erection; and the plaintiffs had no right to insist that it should not be accepted until after those things had been done. Whenever Belser and Parker did any act which showed that they had waived those things and accepted the machinery, the title to it vested at once in them; and, as to innocent purchasers, such as the mortgagees were, the title could not be revested in the plaintiffs. Belser and Parker manifested their acceptance of the machinery by giving the mortgages, after having used and operated it.

By the terms of the contract, one of the payments was to be made by Belser and Parker on their receipt from the plaintiffs of the bill of lading; and under that provision, the title passed to Belser and Parker as soon as they received the machinery, if not before. By the transfer of the property by Belser and Parker, by the mortgages, after they had received it, the title

vested in the mortgagees. The latter were *bona fide* purchasers for value. By the statute of Alabama, three months were allowed for the recording of the mortgages. Code of Alabama of 1876, § 2166. The title to the machinery was in Belser and Parker when the mortgages were executed. The notes given December 11, 1885, conferred no title which related back to a prior date. The most favorable construction that could be given to them would be that they constituted a mortgage executed on December 11, 1885; and prior to that date the mortgage to Lehman, Durr & Co. had been given. If the plaintiffs could recover at all in this suit, it must be against all of the defendants. They could not recover against Crowell, because he held as bailee of all the other defendants. If the title of Lehman, Durr & Co. was better than that of the plaintiffs, Crowell did not detain the property wrongfully; and the gist of the action was that he wrongfully detained it at the time the suit was brought.

If the notes of December 11, 1885, vested any title in the plaintiffs, those notes were never recorded, and there is no evidence that Pollak & Co. had any notice of the claim of the plaintiffs under those notes, at the time Poll *:* & Co. took their mortgage. Therefore, that mortgage divested whatever title the plaintiffs may have had, as against Pollak & Co. Under § 2170 of the Code of Alabama of 1876, it was necessary that the plaintiffs, so far as concerned any title claimed by them under the notes of December 11, 1885, should have recorded the notes as a conveyance of personal property.

Moreover, it is shown that, prior to the commencement of the present suit, the plaintiffs, in May, 1886, filed a mechanics' lien as respected the machinery made under the contract of March 28, 1885, admitting a credit for the $2500 and the $500, and claiming a lien under said contract and under the three notes of December 11, 1885; that in July, 1886, they commenced a suit in a court of the State of Alabama to enforce that lien; and that that suit was dismissed by the plaintiffs without a trial on the merits, before the trial of the present suit was had. The assertion of that lien treated the property as the property of Belser and Parker, and did so after the notes of

December 11, 1885, were taken. It was inconsistent with the existence in the plaintiffs of a title to the property. It treated the-sale of the property to Belser and Parker as unconditional. In *Lehman* v. *Van Winkle*, 8 Southern Reporter, 870, the Supreme Court of ~Alabama held that by the suit to enforce the lien, Van Winkle & Co. made an election to treat the title to the property as in Belser and Parker, and that that election could not be affected by a subsequent attempt to obtain the property by an action of detinue. The proceedings to enforce the lien were pending when the present suit was brought, in November, 1886.

On the whole case, we are of opinion that the trial court acted correctly in instructing the jury to find for the defendants, if they believed the evidence. Even if the plaintiffs were entitled to recover for any articles furnished to Belser and Parker after December 4, 1885, the burden was upon them to identify the articles which Belser and Parker received after that date; but no evidence of such identification was introduced.

The plaintiffs asked the court to give to the jury eight several charges, which are set forth in the margin,[1] " but the

---

[1] *Charges asked by the plaintiffs and refused.*

1. That if the evidence shows that the complainants were the manufacturers of the machinery in question, that would constitute them the owners until by some complete act of sale the title passed to some other person. And there is no complete act of sale until there has been, between the buyer and the seller, a full agreement of their minds, on the part of the vendor to part with his ownership of the property, and of the vendee (or buyer) to accept and receive the property as a full compliance on the part of the seller with his agreement. When this agreement of the minds of the buyer and the seller takes place in any given instance is a question of intention to be determined by a consideration of the situation and surroundings of the parties and the subject matter of the contract and the stipulations to be observed and performed by the parties with respect thereto. The burden of showing satisfactorily that the title has passed from the original owner to a buyer, rests upon the buyer, if he affirms that a sale has taken place; and when the contract is for articles to be manufactured, or for articles in existence at the date of the contract, with or about which the seller, under the terms of the contract, was to do something to put them in such condition as he could insist upon an acceptance by the buyer, or

court severally refused to give each of said charges, and to each such refusal the plaintiffs duly excepted. Each of said

---

as is commonly said, in a deliverable state, the property does not pass from the vendor to the vendee unless it is shown satisfactorily that there was a specific intent of the parties that it should do so contrary to the ordinary course of business. The presumption is against such intent under such circumstances and must be shown by the party asserting it.

2. In a case of doubt the construction which the parties themselves have put upon a contract is of great assistance in arriving at its true meaning. If the contract in this instance was for the purchase of certain cotton-seed oil-mill machinery as a complete mill, which was to be transported to a given place and to be put up by the vendor, or for the putting up of which he was to do anything, such as furnishing mechanics, etc., and which machinery was to be of a given capacity, the presumption of law would be that the property would not pass from the vendor until the latter had completed the mill as a whole, and the vendee had unconditionally accepted it as a fulfilment of the contract; and such acceptance must be notified to the vendor. The doing of secret or fraudulent acts by the vendee in transactions with third persons which might estop him from saying he was not the owner as against the person with whom he dealt would have no operation whatever against the vendor; and in this case the making of the mortgage by Belser and Parker to Lehman, Durr & Co. cannot be regarded as of any force as evidence to show the necessary agreement of the minds of E. Van Winkle & Co. and Belser and Parker as to the relinquishment of the right of property by one and the full acceptance of the property by the other as a compliance with the contract; and until such mutual agreement of the minds of the vendor and vendee is shown the property would remain with the vendor, notwithstanding the buyer should in the meantime execute mortgages or make absolute sales of the property. In such case the vendee cannot alone elect to regard the property as passing, and certainly not by any secret or perhaps fraudulent act. The vendor must also agree to the relinquishment of his right of property, which right may be of importance to the vendor to secure the performance of contemporaneous acts to be done by the buyer, such as making payments falling due before the contract has been fully completed.

3. In the present instance, no right of property passed to the vendee (Belser & Parker) at the time of making the contract. The contract itself contemplated certain things to be done by both the buyer and the seller before any property could pass under the contract to the buyer, and the law is (unless a specific intent is shown to the contrary by the party alleging it) that the property will not in such cases pass until each party has done all that the contract requires to be done before the property is in that condition in which it may be tendered as a full compliance with the contract, and there must be such a tender or delivery of the property to the buyer and such full acceptance by the buyer, and such acceptance and

charges was separately asked and separately refused and each refusal separately excepted to by the plaintiffs." We think the court properly refused to give those charges. The questions involved in them have been substantially considered in what has been hereinbefore said, and it is not necessary to make any further remarks upon them.

*Judgment affirmed.*

MR. JUSTICE SHIRAS was not a member of the court when this case was argued, and took no part in its decision.

---

tender cannot in either case be by secret acts. The law contemplates notice to each party and the mutual assent of their minds to the act of relinquishment of the property by the vendor and its acquirement by the buyer.

4. The payment of instalments prior to or during the progress of the acts to be done by either or both of the parties before the property is in a deliverable state under the contract is not inconsistent with the retention of the property in the vendor.

5. When machinery is to be put up on the premises of the buyer and is to be of a certain quality or capacity under the terms·of the contract, the possession and use of the machinery by the buyer, with the consent of the seller, for the purpose of testing its quality or capacity prior to the full acceptance of the machinery as a compliance with the contract and the relinquishment of the vendor's right of the property, is not inconsistent with the property being with the vendor, notwithstanding such possession. Neither party would be estopped by such a possession.

6. That the jury are to determine under all the evidence whose property the machinery in question was, by mutual understanding of Besler and Parker & E. Van Winkle & Co. up to the 11th of Dec., 1885, and if they find that up to that time there was no mutual agreement or understanding between them whereby it vested in Belser and Parker, or that they (Belser and Parker) refused to accept it as a fulfilment of the contract up to that time and only accepted it at that time and then gave the plaintiffs the notes in evidence, the plaintiffs' right is superior to that of Lehman, Durr & Co., and to that of any of the defendants.

7. That the plaintiffs are entitled to recover such property as was furnished after the 11th of Dec., 1885.

8. That it is a question of intention of the parties as to when the property in the machinery passed to Belser and Parker, and the jury are the judges as to when they both intended that it should pass, and if they believe that they did not so mutually intend that it should pass until the settlement and adjustment on the 11th of Dec., 1885, the plaintiffs' rights are superior to those of Lehman, Durr and Co. and to those of any of the defendants.