TRIMUE v. McCALEB.

Opinion delivered November 15, 1926.

1.  APPEAL AND ERROR—REVIEW OF DIRECTION OF VERDICT.—In review-
    ing the correctness of a direction of verdict for plaintiff, the tes-
    timony will be viewed in the light most favorable to defendant.

2.  BROKERS—FAILURE TO COMPLETE TRANSACTION.—Evidence *held*
    to sustain finding of the insolvency of the makers of purchase-
    money notes, payment of which was a condition of liability for
    a broker's commission.

3.  BILLS AND NOTES—BONA FIDE PURCHASER.—One who acquired notes
    after maturity is not a holder in good faith under Crawford &
    Moses' Dig., § 7767.

4.  BROKERS—RIGHTS TO COMMISSION.—Where a broker's commission
    was payable when the first purchase money should be paid, the
    fact that the purchasers became insolvent and deeded the land
    back to the vendor did not constitute such a payment as would
    render the vendor liable for the broker's commission, though the
    purchasers had made a cash payment exceeding the amount of
    the commission and also a small payment on the first purchase-
    money note.

5.  BROKERS—RIGHT TO COMMISSION.—Indorsement of satisfaction of
    a vendor's lien on the margin of the record where the deed was
    recorded *held* not payment of such lien, so as to render payable a
    note given to a broker payable on payment of the first purchase-
    money note.

6.  BROKERS—RIGHT TO COMMISSION.—The rule that the insolvency of
    a purchaser after the owner has accepted him will not deprive
    the broker of his commission for procuring a purchaser *held*
    inapplicable where payment of such commission was conditioned
    upon the purchaser paying his first purchase-money note, which
    was never paid.

Appeal from Craighead Circuit Court, Jonesboro
District; *W. W. Bandy,* Judge; reversed.

*Basil Baker,* for appellant.

SMITH, J.  Appellee recovered a judgment against
appellant as the maker of a note for $250, dated January
1, 1920.  The note was payable to the order of T. W.
Altman, a real estate agent, and by him indorsed to
appellee.  At the conclusion of all the testimony the court
directed the jury to return a verdict in appellee's favor,
and we must therefore view the testimony in the light

most favorable to appellant, and, when thus viewed, the testimony may be summarized as follows:

Appellant owned a small farm, which he authorized Altman to sell at a price which would net appellant $3,500 in cash, and Altman procured Moskopp and Haas as purchasers, but they were able to pay only a thousand dollars of the purchase money in cash. A sale to Moskopp and Haas was negotiated at the price of $4,000, of which $1,000 was to be paid in cash. One thousand and nine hundred dollars of the purchase money was evidenced by three notes, two for $633 each, and a third for $634. The balance of $1,100 consisted in the assumption of the payment of a mortgage for that amount outstanding against the land at the time of the sale. The purchase price of $4,000 which Moskopp and Haas agreed to pay was $500 in excess of the price which appellant agreed to take, and this excess represented Altman's commission in the sale.

Appellant was unwilling to accept Moskopp and Haas unconditionally as purchasers of the land, so far, at least, as the payment of the commission was concerned, and, in payment of the $500 commission, he executed two notes to Altman's order, each for the sum of $250, the note here sued on being one of them, and the first one to fall due. The understanding between appellant and Altman was that the first note for the commission was to be paid when the first purchase money note was paid, and the second note for commission was to be paid when the second purchase money note was paid. As evidencing this agreement, the note here sued on has written in its face this condition: "This note is payable when Moskopp and Haas pay their first land note in favor of J. S. Trimue" (appellant).

At the time of the negotiations for the sale of the land it was understood and agreed by all the parties, including Altman, that, upon the maturity of the outstanding mortgage against the land, Altman would aid the purchasers, Moskopp and Haas, in procuring a new loan, and for a sum sufficient to pay the mortgage indebt-

edness and to discharge another lien against the land for $275 and the interest thereon.

Altman negotiated a new loan in the sum of $1,500 for Moskopp and Haas, and out of the net proceeds thereof paid the $1,100 mortgage and the accumulated interest and the $275 lien, which, with the interest thereon, amounted to $305. The small balance remaining was credited equally on each of the three purchase money notes.

The loan company agreed to make this loan only upon the condition that it be given a first lien, and, to accomplish this purpose, it was required, not only that the two outstanding liens above referred to be canceled and satisfied, but also that appellant cancel his vendor's lien to secure the unpaid purchase money due him, and this he did by indorsement of payment of the purchase money notes on the margin of the record where his deed to Moskopp and Haas was recorded. Thereafter appellant took from Moskopp and Haas a second mortgage on the land to secure the unpaid purchase money due him. Evidencing this indebtedness, three notes of Moskopp and Haas were taken, which gave a more extended time for payment than the original purchase money notes gave.

Altman was aware of and was a party to all these arrangements; indeed, it was he who negotiated and consummated the new arrangements, and this was done pursuant to an understanding had at the time of the original sale of the land.

Moskopp and Haas were unable to make any additional payments, either on the purchase money or on the mortgage which they had given to the loan company. Moskopp and Haas had both become insolvent. The court below found the fact so to be, and, if their insolvency is not shown by the undisputed evidence, it may at least be said that the testimony was sufficient to support that finding. Moskopp testified that both he and Haas were insolvent, that Haas realized his inability to pay anything on the land, and he abandoned it. Moskopp further testified that he, too, was insolvent, and he was

shortly thereafter adjudged a bankrupt, and at the time he gave his testimony at the trial below he had received his discharge in bankruptcy.

Haas abandoned the land, but joined with Moskopp in reconveying it to appellant in satisfaction of their notes for the purchase money, and a quitclaim deed was executed by them for that purpose, and appellant, with the knowledge and consent of Altman, accepted this deed in satisfaction of the debt due him from Moskopp and Haas, but he testified that this was done only because he knew that Moskopp and Haas were insolvent, and that a suit against them could result in nothing more favorable than a decree foreclosing the mortgage under which the land could be sold, and that he accepted the quitclaim deed to accomplish the only purpose which a foreclosure suit could accomplish and to avoid the expense of foreclosure. He thus recovered the land, but took it subject to the $1,500 mortgage which Moskopp and Haas had executed to the loan company.

The court below had the view that, when Moskopp and Haas deeded the land back to appellant and he surrendered to them their notes, this was, in law, a payment, and made the note here sued on due and payable, and, upon this theory, directed the jury to return a verdict in appellee's favor for the amount of the note, and this appeal is from the judgment pronounced on the verdict so returned.

There is no question in the case about appellee being the holder in good faith of a negotiable note, for value, before maturity. This is true for two reasons. First, according to the testimony on appellant's behalf, appellee did not acquire the note until after its maturity; and, second, the note was not an unconditional promise to pay money, either on demand or at a fixed or determinable future time. Section 7767, C. & M. Digest.

The question therefore is whether there was such a payment of the purchase money notes as matured and made payable the notes given for the broker's commission.

We think the court was in error in holding that the purchase money notes had been paid, under the circumstances herein recited, and, not having been paid, the agent's commission was never earned.

The doctrine announced in the case of *Boysen* v. *Frink,* 80 Ark. 254, 96 S. W. 1056, applies here. In that case the broker had negotiated a sale of a tract of land, under a contract with the owner which provided that the broker should have a commission of seventy-five cents per acre on the land sold, one-half of which was to be paid when one-third of the purchase price had been paid, and the other half of the commission was to be paid when one-half of the purchase price of the land had been paid the owner. The proposed purchaser was insolvent, and did not pay any of the purchase money notes. The agent recovered judgment for the full amount of the commissions.

In reversing this judgment it was said that it was the duty of the broker to furnish a customer able and willing to comply with the proposed sale before he is entitled to commission, when the commission is conditioned on payment of the purchase price. In that case the owner accepted from the proposed purchaser a thousand dollars as reimbursement for losses and expenditures caused by the breach of contract, and there was testimony on the part of the owner that he made diligent, but unsuccessful, effort to collect the purchase money notes. It was said that, if the thousand dollars was accepted in good faith as a reimbursement of losses for the proposed purchaser's breach of contract, and that the contract, to the extent of the agent's interest, could not be enforced, the agent had no case against the owner. The court also said that, if the thousand dollars was not accepted in good faith as a settlement of an otherwise uncollectable debt, but was accepted as a deal more advantageous to the owner than the enforcement of a valid sale, the owner would have to pay the agent before casting up his profits on the venture.

The court said: "If the purchaser was insolvent, no harm could be worked to Frink (the agent) by surrendering worthless notes; nor could any harm be worked him if the purchaser was irresponsible and yet paid Boysen (the owner) something (less than one-third the purchase price) for return of the notes, because Frink could not recover any commission until payment of one-third of the purchase price was made, nor all of his commission until payment of one-half the purchase price was made."

In this case, as in that, the owner had protected himself against the demand of the agent for a commission by stipulating when the commission should be paid, and the condition was never met in either case. The proposed purchaser in each case was insolvent, and, because of insolvency, the owner there, as here, was unable to enforce the contract of sale.

It is true Moskopp and Haas paid appellant a thousand dollars in cash, and that this sum exceeded the agent's commission; but it is also true that this payment was not the one which determined when the broker's commission should be paid. That was dependent upon the payment of the first and second purchase money notes, and the payment of these notes could not be enforced because of the insolvency of the makers, and it may therefore be said here, as was said in the Frink case, that no harm was done the broker by surrendering worthless notes.

If it be said that Moskopp and Haas made appellant a small payment on each of the three purchase money notes, it may be answered that the total sum credited on all three of these notes did not equal the first purchase money note, and it may be further said that the amount so paid was derived from the proceeds of the mortgage to the loan company, and appellant, in retaking the land, took it subject to this increased indebtedness.

We think the views here announced are not in conflict with the opinion in the case of *Pinkerton* v. *Hudson*, 87 Ark. 506, 113 S. W. 35. There a broker had negotiated

a sale under which his commissions were payable when certain parts of the purchase money were paid, and it was held that the fact that the real estate broker was postponed in his right to recover his commission until the purchase money was paid did not relieve the vendor of liability to pay such commission if, notwithstanding the purchaser was financially responsible, the vendor refused to collect the purchase money. But in that case the opinion recites the fact to be that the purchaser of the land was able to carry out the contract of purchase, and, this being true, the court held that it was the duty of the owner to sue the purchaser and compel payment, but that, having failed to discharge this duty, he must pay the broker his commission.

But just here is the distinction between that case, on the one hand, and the Frink case and the instant case, on the other. The purchasers here and in the Frink case were insolvent, and suit against them would have been fruitless, and the law does not require one to do a vain and useless thing. In the Pinkerton case the owner, by suing the proposed purchaser, could have enforced the contract or have collected damages for its breach, while here and in the Frink case suit against the proposed purchasers would have been unavailing, so far as collecting the purchase money is concerned.

The indorsement of satisfaction of the vendor's lien in appellant's favor on the margin of the record where his deed to Moskopp and Haas was recorded, was not a payment, and was not understood to be; indeed, the court did not so hold. The payment, in the opinion of the court below, consisted, not in the satisfaction of the vendor's lien, but in accepting a deed from Moskopp and Haas and the surrender to them of their purchase money notes; but, as we have shown, this was not a payment, because the notes were worthless, and the deed was accepted on that account, at least the jury might have found the fact so to be, and would have done so had they accepted appellant's version of the transaction, and, for this reason, the court was in error in directing a verdict in appellee's favor.

There are numerous cases in which it has been held that, if the owner accepts a proposed purchaser and enters into a binding contract with him, the existent or subsequent insolvency of the purchaser does not deprive the broker of his commission; but the rule is otherwise where the owner stipulates that the commission shall be payable under certain conditions, and those conditions are not complied with .through no fault of the owner. *Harnwell* v. *Arnold,* 128 Ark. 10; *Moore* v. *Irwin,* 89 Ark. 289; *Coleman* v. *Edgar Lumber Co.,* 155 Ark. 275.

The judgment of the court below must therefore be reversed, and the cause remanded for a new trial, and it is so ordered. ·