## KENDRICK v. SPECK.
### No. 3470.

Circuit Court of Appeals, Fourth Circuit.
Oct. 17, 1933.

SOPER, Circuit Judge, dissenting.

---

Joe W. Ervin and G. T. Carswell, both of Charlotte, N. C., for appellant.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a suit brought in the District Court of the United States for the Western District of North Carolina, by the appellee (herein referred to as plaintiff) against appellant (herein referred to as defendant). At the trial at Charlotte, N. C., in February, 1932, the judge below directed a verdict in favor of the plaintiff for the sum of $3,000, with interest from September 5, 1925, until paid, and judgment was entered for this amount, together with the costs. From this judgment this appeal was brought.

In September, 1925, the plaintiff negotiated a sale of certain real estate in the state of Florida belonging to the defendant and one Erwin. The owners received for the land $56,000 in cash, and two notes of $56,045 each, executed by the purchasers, due in one and two years after the date of the sale, and secured by a mortgage on the land sold. As his commission for the sale of the land the plaintiff received the sum of $8,440.50 out of the initial cash payment, and the owners of the land executed two notes, one signed by each of them, payable to the plaintiff in the sum of $4,220.25 each. The note signed by the defendant read as follows:

"Note.

"$4220.25          September 5th, 1925.
"One Year next after date, I, we or either of us promise to pay to the order of A. J. Speck, subject to condition on back, Four Thousand Two Hundred Twenty 25/100 Dollars, at Bank of Pompano, Fla.

"For value received, with interest after date at the rate of 8 per cent per annum until paid.

"The holder of this note being expressly authorized to retain any general or special deposit, collateral, real or personal security or proceeds thereof, belonging to the undersigned, now or hereafter in the possession of said holder, during the time this note remains unpaid, and at, before or after maturity to apply same to this or any other debt or liabilities of the undersigned to the said holder, due or to become due.

"Now, should it become necessary to collect this note through an attorney, either of us, whether maker, security or endorser of this note, hereby agrees to pay all costs of such collections, including reasonable attorneys' fee. The drawers and endorsers severally waive presentment, for payment, protest and notice of protest for non-payment of this note.

"Signed—J. V. Kendrick   [Seal.]
"Address
"No.  Due, Sept. 5, 1926."

Notation on back of above note:

"This note is given as part of commission on sale of 56 acres in Broward County Fla. and be payable out of second payment on said sale.

"Signed—A. J. Speck."

At the trial the defendant offered evidence tending to prove that the plaintiff was not to receive the sums of money evidenced by the

notes given, in addition to the cash received by him, but was to receive 10 per cent of the cash actually received by the vendors of the land from the sale of said land. This evidence was in the form of testimony by the defendant alone without corroboration, and the trial judge excluded a large part of this testimony as improper—as being an effort to vary a written instrument by parol evidence.

From the evidence it developed that upon the failure of the purchaser of the property in question to make the second payment the vendors of the land compromised with the purchaser for the sum of $6,000, each of the vendors receiving $3,000. This was done without any notice to the plaintiff or consultation with him. The mortgage on the land sold, which secured the deferred payments, was released and no effort was made by defendant to collect the deferred payments other than the compromise above mentioned.

It is contended on behalf of the defendant that the trial judge erred in excluding the oral evidence with regard to the transaction, and in directing a verdict for the plaintiff and signing the judgment. We cannot agree with these contentions. It has long been settled that parol evidence is inadmissible to alter or explain written instruments, and that conversations or agreements of parties prior to the execution of a written instrument are presumed to have been merged and embodied in their written agreement. Van Winkle v. Canty Crowell, 146 U. S. 42, 13 S. Ct. 18, 36 L. Ed. 880. Authorities to this effect could be multiplied without number. Here the note speaks for itself, and there is no ambiguity justifying oral evidence with regard to it. The defendant agreed to pay the plaintiff out of the second payment on the property. The defendant compromised the claim for the second payment without notice to the plaintiff, and released the security for it without any attempt to collect it. The defendant received $3,000 of the second payment and, under the expressed terms of the written agreement, certainly owed the plaintiff on the note sued on the said amount of $3,000.

Provisions of this character should be construed liberally in favor of the payee. Smithers v. Junker (C. C.) 41 F. 101, 7 L. R. A. 264, Dille v. Longwell, 188 Iowa, 606, 176 N. W. 619.

The action of the judge below in directing a verdict for the amount of $3,000 was correct, and the judgment is accordingly affirmed.

SOPER, Circuit Judge (dissenting).

The difficulty which confronts the court in this case is that the parties made no provision in their contract for the contingency which has arisen. The note in suit formed part of a contract whereby the vendors agreed to pay the broker a commission of 10 per cent. on the selling price of the land if he would secure a purchaser at $3,000 an acre, amply able to carry out the contract, who would pay one-third of the purchase price in cash. One-half of the commissions was to be paid out of the cash payment, and the remaining half was to be paid out of the second payment by the purchaser when and after it should be made. The first half of the commissions was paid, since purchasers were found who contracted to pay the stipulated price, and actually paid one-third in cash; and the note in suit was given in order to effectuate the agreement as to the second half of the broker's commissions. There is no dispute as to any of these facts, except the condition that the broker was to secure a purchaser amply able to carry out the contract, but testimony by the defendant vendor to this effect was admitted without objection in the District Court and it must be accepted as true, since a verdict against him was directed. Moreover, it was given effect in a somewhat different form in the statement indorsed upon the vendors' notes.

Like all written instruments, the note in suit must be interpreted according to its terms and in the light of the surrounding circumstances. Williston on Contracts, vol. 2, §§ 618, 629; Eustis Mining Co. v. Beer, Sondheimer & Co. (D. C.) 239 F. 976, 985. In this instance, we are obliged to go outside the body of the instrument in order to understand its full import, for on its face it was made payable subject to the condition on the back, where it was stated that the note was given as part of the commissions on the sale of 56 acres in Broward county, Fla., and was payable out of the second payment on the sale. Williston on Contracts, §§ 581, 628. The terms of the contract of sale are not in dispute. The land was sold for $168,810, and the purchasers paid $56,000, or approximately one-third of the purchase price in cash, and for the balance gave to the vendors two notes for $56,405 each, payable in one and two years after date, respectively. The broker's commissions at 10 per cent. amounted to $16,881, of which one-half, or $8,440.50, was paid in cash; and for the balance, the defendant in the court below, and his covendor, each gave

the broker a promissory note for one-half of $8,440.50, the remainder of the commissions, payable in one year "out of the second payment on said sale." Thus it is clear that the parties intended by the vendors' notes that the broker was to get the second half of his commissions, or $8,440.50, out of the second payment of $56,405 by the purchasers, just as he received the first half of the commissions out of the purchasers' first payment of $56,000. It is manifest that the parties made provision for but one contingency; that is, performance by the purchasers of their obligation to make the second payment of $56,405 under the contract of sale. Only when this should occur were the vendors' notes to mature, and since the attention of the parties was confined to this one prospective event, the vendors made no promise in their notes to make any payment to the broker if the purchaser should pay them a sum less than $56,405. Certainly no provision was made for the possibility that the second payment of the purchasers would be less than the sum which the vendors had conditionally agreed to pay to the broker. In short, the express condition upon which the vendors' notes were given was not satisfied, and if any obligation on the part of the defendant vendor arose upon the acceptance by him of the sum of $3,000 from the purchasers, it did not spring from the note sued on in this case.

The law applicable to such a conditional contract as we have in this case is well settled. It is said in Williston on Contracts, vol. 2, § 671, that any words will create a condition which express the idea that the performance of the promise is dependent on some other event; and such words as "when," "after," and "as soon as" clearly indicate that the promise is not to be performed except upon a condition. There are many cases in the books in which these general rules have been applied to contracts for broker's commissions, payable upon some stipulated condition. See the notes in 20 A. L. R. 280, 289; 51 A. L. R. 1386, 1399; and 73 A. L. R. 918, 926.

In the absence of a special contract, the general rule is that a real estate broker is entitled to his commissions when he has procured a purchaser ready, able, and willing to purchase the property upon the terms offered by the owner. The seller takes the risk that the purchaser will perform. But, on the other hand, it is uniformly held that the failure of a purchaser to carry out his contract is fatal to the broker's right to commissions under a special contract by which the commissions are made dependent upon some condition of like import to that indorsed on the note in this case, such as the payment of the purchase price or some part thereof, the payment of notes executed by the purchaser, or the consummation of the sale. Lewis v. Briggs, 81 Ark. 96, 98 S. W. 683; Trimue v. McCaleb, 172 Ark. 137, 287 S. W. 740; Smith v. Post, 167 Cal. 69, 138 P. 705; Orner v. Liner, 238 Ill. App. 348; Van Norman v. Fitchette, 100 Minn. 145, 110 N. W. 851; Holbrook v. Investment Co., 30 Or. 259, 47 P. 920; Ennis v. Cator (Tex. Civ. App.) 174 S. W. 947; Martineau v. Hanson, 47 Utah, 549, 155 P. 432; Cannon v. Selmser, 85 Cal. App. 783, 260 P. 332.

We come then to inquire whether the action of the sellers in accepting $6,000 from the purchasers, and canceling their obligation to pay the balance of $112,810, justified the peremptory instruction of the trial court that the broker was entitled to the entire payment which the sellers thus received. The question should be solved by reference to the general rule of conditional contracts that although the promisee may not recover unless the condition is fulfilled upon which the promisor's liability depends, nevertheless, if the promisor himself causes the nonperformance of the condition, he cannot take advantage of the failure. Williston on Contracts, vol. 2, § 677. The only evidence on the point was given by the defendant himself when he said that he made a financial investigation as to the worth of the purchasers, and found that they were unable to pay; that he would not have settled the obligations if he thought he would have been able to get more, and that he would rather have had the money payment of $6,000 than the land. We must accept this testimony as true, and it is inherently probable, for the record shows that the Florida boom had broken, and no reason appears why so great an obligation should be voluntarily surrendered. We must perforce believe that the vendors in good faith made the best possible settlement.

Hence it cannot be said that the vendors were to blame for the purchaser's failure to perform; and it follows, in accordance with abundant authority, that the settlement which they made did not put an end to the condition indorsed on the back of their notes. In Amies v. Wesnofske, 255 N. Y. 156, 174 N. E. 436, 73 A. L. R. 918, certain real estate was sold for $124,000, of which $10,000 was paid in cash and $30,000 was to be paid several months thereafter, upon the delivery of the deed, and the balance by the execution of a purchase-money mortgage. It was agreed that the brokers should be paid for their services

$5,000, one-half at the time of the signing of the contract, and the balance on the closing of the title. The title was not closed, since the purchaser declined, for lack of funds, to complete the contract, and it was agreed between the buyer and the seller that the latter might retain the $10,000 already paid, and that the obligations of the contract should cease. The broker sued for the additional $2,500, but the Court of Appeals of New York held that there was no liability to the broker since the condition had not been performed. It was declared that the vendor was under no duty to enforce specific performance and might accept a forfeiture and retain the down payment. Similar decisions are found in Simon v. Myers, 284 Pa. 3, 130 A. 256, where it is emphasized that under such a contract, the seller is under no obligation to undertake the expense and uncertainty of a lawsuit; and in Dunne v. Colomb, 192 Cal. 740, 221 P. 912; Sams v. Olympia Holding Co., 153 Wash. 254, 279 P. 575.

A case quite similar to that at bar was Boysen v. Frink, 80 Ark. 254, 96 S. W. 1056, in which a broker was employed to procure a purchaser for real estate under an agreement that he should get one-half commissions when one-third of the selling price was paid, and the other half when one-half was paid. The landowner, after endeavoring unsuccessfully to collect the purchase-money notes, made a compromise and surrender of notes, and received a sum less than one-third of the purchase money. The court held that the landowner's liability for commissions would depend upon whether the notes could have been collected by proper diligence, or at least so much of them as would have entitled the broker to his commissions under the contract; and since this rule was not followed by the trial court, the judgment in favor of the broker was reversed. The rule of this case was reaffirmed in Trimue v. McCaleb, 172 Ark. 137, 287 S. W. 740, supra. See, also, Chambers v. Estes, 159 Ark. 250, 251 S. W. 701; Weiner v. Infeld, 116 Misc. 323, 190 N. Y. S. 82; Ballard v. Shea, 121 Ill. App. 135; compare Tarbell v. Bomes, 48 R. I. 86, 135 A. 604, 51 A. L. R. 1386.

Viewed in its most favorable light, the case is one in which there has been a part performance of a condition exacted by the promisor from which he has received some benefit, a situation which sometimes entitles the promisee to a ratable proportion of the agreed compensation. The Restatement of the Law of Contracts, § 357, provides: "Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered part performance under the contract, that is a net benefit to the defendant, the plaintiff can get judgment * * * for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation if (a) the plaintiff's breach or non-performance is not wilful and deliberate."

See, also, section 468.

But even if we should consider that the broker comes within the quoted rule, the judgment below could not be sustained. He was to be paid a commission of 10 per cent. at the rate of 15 per cent. on the first two payments, aggregating two-thirds of the total purchase price. A ratable proportion of the sum of $3,000 received by the defendant vendor from the purchasers would amount to $450. Under no aspect of the case should the recovery have exceeded this sum.